## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

MARIA COMEAUX, Individually and on behalf of all others similarly situated,    )
)
)
        Plaintiff,    )
)
vs.    )    Case No. CIV-17-191-M
)
SEVENTY SEVEN ENERGY INC.,    )
JERRY L. WINCHESTER, VICTOR    )
DANH, ANDREW AXELROD,    )
DOUGLAS J. WALL, DAVID KING,    )
EDWARD J. DIPAOLO, and STEVEN    )
HINCHMAN,    )
)
        Defendants.    )

## DEFENDANTS' RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Timothy J. Bomhoff, OBA #13172
Patrick L. Stein, OBA #30737
Spencer Smith, OBA #20430
MCAFEE & TAFT
Tenth Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102-7103
Telephone:  405.235.9621
Facsimile:  405.235.0439
tim.bomhoff@mcafeetaft.com
spencer.smith@mcafeetaft.com
patrick.stein@mcafeetaft.com

Paul K. Rowe, NY Bar #1688779
(application for admission pro hac vice
forthcoming)
Rachelle Silverberg, NY Bar #2614063
(application for admission pro hac vice
forthcoming)
Bradley R. Wilson, NY Bar #4338505
(application for admission pro hac vice
forthcoming)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:  212.403.1000
Facsimile:  212.403.2000
PKRowe@wlrk.com
RSilverberg@wlrk.com
BRWilson@wlrk.com

April 5, 2017

# **TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ............................................................................. 1

II. BACKGROUND ................................................................................................. 3

    A.    The proposed merger ................................................................................ 3

    B.    This action ................................................................................................ 4

III. ARGUMENT

    PLAINTIFF HAS NOT MET HER BURDEN TO OBTAIN THE
    EXTRAORDINARY REMEDY OF A PRELIMINARY INJUNCTION. ............ 5

    A.    Plaintiff's claim that SEC Regulation G applies to the projections
        used in the financial advisors' analyses of the proposed merger is
        unlikely to succeed on the merits. ............................................................ 6

    B.    Plaintiff's claim that the Proxy should have disclosed the number of
        shares of Patterson-UTI held by Morgan Stanley is unlikely to
        succeed on the merits. .............................................................................. 11

IV. CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Brown* v. *Kinross Gold U.S.A., Inc.*,
  531 F. Supp. 2d 1234 (D. Nev. 2008)....................................................... 13 n.6

*Coquina Oil Corp.* v. *Transwestern Pipeline Co.*,
  825 F.2d 1461 (10th Cir. 1987) ............................................................... 16 n.8

*Deborah G. Mallow IRA SEP Inv. Plan* v. *McClendon*,
  2012 WL 2036748 (W.D. Okla. June 6, 2012)........................................ 5, 10

*Diné Citizens Against Ruining Our Env't* v. *Jewell*,
  839 F.3d 1276 (10th Cir. 2016) ................................................................. 5, 6

*ForteCEO Servs., Inc.* v. *Terra Contracting, LLC*,
  2014 WL 4376299 (N.D. Ill. Sept. 4, 2014) ........................................... 11 n.5

*Gaines* v. *Narachi*,
  2011 WL 4822551 (Del. Ch. Oct. 6, 2011) ............................................. 11 n.5

*Goldstein* v. *Bear, Stearns & Co.*,
  1988 WL 95135 (E.D.N.Y. Sept. 7, 1988) ............................................... 15 n.7

*In re Micromet, Inc. S'holders Litig.*,
  2012 WL 681785 (Del. Ch. Feb. 29, 2012)........................................13-14, 16

*In re Plains Expl. & Prod. Co. Stockholder Litig.*,
  2013 WL 1909124 (Del. Ch. May 9, 2013)................................................. 15

*In re Rural Metro Corp.*,
  88 A.3d 54 (Del. Ch. 2014) ..................................................................... 15 n.7

*In re Trulia, Inc. Stockholder Litig.*,
  129 A.3d 884 (Del. Ch. 2016) .................................................................... 5 n.2

*In re Vivendi Univseral, S.A. Sec. Litig.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003) ..................................................... 11 n.5

*In re Volcano Corp. Stockholder Litig.*,
  143 A.3d 727 (Del. Ch. 2016) .................................................................15-16

*In re Walgreen Co. Stockholder Litig.*,
  832 F.3d 718 (7th Cir. 2016) ..................................................................... 4 n.2

*In re WorldCom, Inc. Sec. Litig.*,
   346 F. Supp. 2d 628 (S.D.N.Y. 2004) ................................................................ 15 n.7

Johnson & Johnson Vision Care, Inc. v. Reyes,
   665 F. App'x 736 (10th Cir. 2016) ..................................................................... 5

*Keirnan* v. *Utah Transit Auth.*,
   339 F.3d 1217 (10th Cir. 2003) ......................................................................... 6

*Kin-Ark Corp.* v. *Boyles*,
   593 F.2d 361 (10th Cir. 1979) ........................................................................... 13

*La. Mun. Police Emps.' Ret. Sys.* v. *Cont'l Res., Inc.*,
   886 F. Supp. 2d 1255 (W.D. Okla. 2012) ......................................................... 10

*Lane* v. *Page*,
   581 F. Supp. 2d 1094 (D.N.M. 2008) ............................................................... 12

*Mazurek* v. *Armstrong*,
   520 U.S. 968 (1997).......................................................................................... 5

*Tow* v. *Bulmahn*,
   2016 WL 1722246 (E.D. La. Apr. 29, 2016)..................................................... 13 n.6

*TSC Indus., Inc.* v. *Northway, Inc.*,
   426 U.S. 438 (1976).......................................................................................... 12

*Winter* v. *Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008).............................................................................................. 6

**Statutes, Rules, and Regulations**

17 C.F.R. § 229.1015(b)(6) ....................................................................................... 7 n.3

17 C.F.R. § 240.14a-9................................................................................................ 11

17 C.F.R. § 240.14a-101 ........................................................................................... 7 n.3

17 C.F.R. § 244.100(d) .............................................................................................. 8

# I. PRELIMINARY STATEMENT

Plaintiff, a purported stockholder of Seventy Seven Energy Inc. ("SSE"), is seeking to enjoin an upcoming stockholder vote to approve or disapprove a proposed merger with Patterson-UTI Energy Inc. ("Patterson-UTI") valued at $1.76 billion, which translates to a 90% premium (or approximately $558 million in value) based on the trading price of both companies' shares shortly before the transaction was announced. Despite the substantial premium that the proposed merger represents, plaintiff seeks to have the merger vote enjoined based on two alleged "non-disclosures" in the 235-page proxy statement and prospectus that Patterson-UTI and SSE disseminated to their stockholders after it was vetted and cleared by the Staff of the Securities and Exchange Commission (the "SEC").  But plaintiff's motion does not come close to supporting the extraordinary remedy of a preliminary injunction.  As shown below, plaintiff's claims are contrary to law, and they are inconsistent with both the SEC's approach to disclosure and decades' worth of public disclosures related to proposed mergers.

Plaintiff's principal argument challenges the disclosure of forward-looking projections that were prepared by management for Patterson-UTI and SSE and provided to the companies' financial advisors for use in their analyses of the proposed merger. According to plaintiff, because the projections the advisors used included "non-GAAP" financial measures — that is, financial measures that are not a part of Generally Accepted Accounting Principles — the proxy statement and prospectus should have reconciled those non-GAAP measures to comparable GAAP measures.  But plaintiff's claim is foreclosed by the very SEC regulation on which it is based, which expressly excludes

from its scope disclosures that describe a financial advisor's analysis of a proposed business combination transaction.

Plaintiff's position is also belied by the record of the SEC's comments on preliminary versions of the proxy statement and prospectus. That record shows that, during the review process, the SEC asked Patterson-UTI and SSE to supplement their disclosures to include free cash flow projections that SSE's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley"), had relied on when conducting its analyses. The record also demonstrates that the SEC *did not ask* Patterson-UTI and SSE to reconcile the non-GAAP projections that Morgan Stanley used to a comparable GAAP measure. Granting plaintiff's motion would therefore require the Court to conclude that the SEC does not know how to read and apply its own regulations.

Plaintiff also argues that the proxy statement and prospectus should have disclosed that Morgan Stanley had a *de minimis* holding of Patterson-UTI shares — a position that amounts to a small fraction of a percent of Morgan Stanley's overall trading portfolio. Plaintiff cites no case that has ever required financial advisors to disclose the size of such holdings in cases like this one, and the courts that have considered the issue have all concluded that no disclosure is required. Consistent with the relevant case law, the proxy statement and prospectus made clear that Morgan Stanley may buy and sell shares of Patterson-UTI stock from time to time, and any SSE stockholder who wishes to learn more can find additional information from public sources, just like plaintiff did. But in all events, the omitted information is immaterial as a matter of law. For these reasons, the motion should be denied.

## II. BACKGROUND

### A.     The proposed merger

On December 12, 2016, Patterson-UTI announced that it had agreed to acquire SSE in an all-stock merger valued at $1.76 billion (including the assumption of SSE debt). Ex. 1.[1]  SSE's stockholders stand to receive approximately 1.77 shares of Patterson-UTI common stock in exchange for their SSE shares. Ex. 2 at 2. Based on the public trading price of Patterson-UTI's shares on December 8, the exchange ratio implies a value of $51.19 per SSE share, an approximately 97% premium over SSE's share price of $26.00 as of that date. *Id.* at 95.

The proposed merger is subject to approval by each company's stockholders. *Id.* at 143. Patterson-UTI's and SSE's stockholders are scheduled to vote on proposals to approve the merger at special meetings scheduled for April 20. *Id.* at 2. Pursuant to SEC rules, the stockholders of Patterson-UTI and SSE have been mailed a joint proxy statement and prospectus (the "Proxy"), dated March 22, 2017, which, among other things, (i) describes the merger negotiations (*id.* at 73-83); (ii) details the analyses conducted by each company's financial advisors — Piper Jaffray & Co. ("Piper Jaffray") for Patterson-UTI and Morgan Stanley for SSE (*id.* at 86-95; 98-110); and (iii) explains why each company's board of directors is recommending that stockholders approve the proposed merger (*id.* at 83-86; 95-97).

---

[1]   The documents cited in this opposition brief are being submitted to the Court as exhibits to the accompanying transmittal declaration of Timothy J. Bomhoff, which is being filed today, and are cited herein respectively as "Ex. __."

The Proxy was subject to multiple rounds of SEC review before it was mailed to stockholders.  Patterson-UTI and SSE filed a preliminary proxy statement and prospectus on January 23, 2017 (Ex. 3), and the SEC provided comments on that preliminary filing in a letter dated February 17 (Ex. 4).  Patterson-UTI and SSE addressed those comments in an amended preliminary proxy statement and prospectus filed on February 23 (Ex. 5), and the SEC provided additional comments on March 3 (Ex. 6).  Patterson-UTI and SSE filed another amended preliminary proxy statement and prospectus that addressed the SEC's further comments on March 13 (Ex. 7), and the SEC did not comment further. The SEC declared the Proxy effective on March 22.  Patterson-UTI and SSE filed the Proxy on that date and mailed it to their respective stockholders soon thereafter.

**B.    This action**

Plaintiff filed the complaint on February 22, 2017.  The complaint alleged that the preliminary proxy statement and prospectus omitted material information in violation of Section 14(a) of the Securities Exchange Act of 1934 and Rule 14a-9 promulgated thereunder (*e.g.*, Compl. ¶ 6) and sought principally injunctive relief — namely, a judgment enjoining SSE from holding a stockholder vote on the proposed merger until it disclosed the information in question (*id.* at Prayer ¶ B).  But plaintiff did not seek judicial intervention at that time.[2]

---

[2]    This lawsuit is symptomatic of the national epidemic of litigation filed in the wake of public-company merger announcements "for the sole purpose of obtaining fees for the plaintiffs' counsel" based upon the threat of an injunction.  *In re Walgreen Co.* v. *Stockholder Litig.*, 832 F.3d 718, 721 (7th Cir. 2016).  As courts across the country have recognized, these cases are filed based on the assumption that many defendants would rather make a handful of "non-material supplemental disclosures" and pay "deal 'rents'

Plaintiff filed this motion for a preliminary injunction on March 28.   Plaintiff asserts that the SSE stockholder vote that is scheduled to occur on April 20 should be enjoined until defendants amend the Proxy to (i) provide "a schedule reconciling the non-GAAP . . . financial projections included in the Proxy to the most directly comparable GAAP measure"; and (ii) disclose that "Morgan Stanley holds approximately $19 million in Patterson-UTI common stock," a figure that is based on the public trading price for such shares on the day the complaint was filed.  Mot. at 3.

### III. ARGUMENT

### PLAINTIFF HAS NOT MET HER BURDEN TO OBTAIN THE EXTRAORDINARY REMEDY OF A PRELIMINARY INJUNCTION.

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Johnson & Johnson Vision Care, Inc.* v. *Reyes*, 665 F. App'x 736, 740-41 (10th Cir. 2016) (quoting *Mazurek* v. *Armstrong*, 520 U.S. 968, 972 (1997)).   "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal."  *Diné Citizens Against Ruining Our Env't* v. *Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (citation omitted); *accord Deborah G. Mallow IRA SEP Inv. Plan* v. *McClendon*, 2012 WL 2036748, at *2 (W.D. Okla. June 6, 2012).

To obtain a preliminary injunction, the movant must demonstrate:   "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the

---

or 'taxes'" to plaintiffs' counsel rather than incur defense cost at the risk of an injunction. *See In re Trulia, Inc. Stockholder Litig.*, 129 A.3d 884, 894-96 (Del. Ch. 2016) (noting that "supplemental disclosures rarely yield genuine benefits for stockholders").

injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest."  *Jewell*, 839 F.3d at 1281.  As shown below, plaintiff's disclosure claims find no support in the law and are highly *unlikely* to succeed. The motion for a preliminary injunction accordingly fails at the first step, without any need to consider the remaining factors.

Plaintiff mistakenly argues, based on overruled case law, that the "'probability of success prerequisite becomes more lenient' when the moving party satisfies the other three requirements."  Mot. at 3-4 (quoting *Keirnan* v. *Utah Transit Auth.*, 339 F.3d 1217, 1221 (10th Cir. 2003)).  That is not the law.  As the Tenth Circuit recently recognized, the "modified test" that plaintiff sponsors is contrary to intervening Supreme Court authority, which established that "any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible."  *Jewell*, 839 F.3d at 1281-82 (citing *Winter* v. *Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Accordingly, the "frequently reiterated standard" applies in every case, and "the plaintiff must show that he is likely to succeed on the merits."  *Id.* at 1282.  Plaintiff has not come close to making that showing here.

### A. Plaintiff's claim that SEC Regulation G applies to the projections used in the financial advisors' analyses of the proposed merger is unlikely to succeed on the merits.

As is customary for significant corporate transactions like this one, Patterson-UTI and SSE engaged outside financial advisors to analyze the proposed merger and evaluate its fairness.  Ex. 2 at 86, 98.  The Proxy provides a detailed summary of the valuation

analyses that Piper Jaffray and Morgan Stanley conducted on behalf of Patterson-UTI and SSE, respectively, before opining that the proposed merger is fair from a financial point of view.  *Id.* at 89-94, 99-109.  In connection with those summaries, the Proxy also discloses the five-year financial projections prepared by Patterson-UTI and SSE management and provided to Piper Jaffray and Morgan Stanley for use in their discounted cash flow analyses.  *Id.* at 112-14.  All of this information was disclosed pursuant to Item 1015 of SEC Regulation M-A.[3]

Plaintiff contends that because some of the projections used in Piper Jaffray's and Morgan Stanley's analyses and disclosed in the Proxy involved non-GAAP financial measures (namely, the EBITDA and free cash flow projections), Patterson-UTI and SSE were required under SEC Regulation G to "reconcile" the projections that the advisors actually used to "the 'most directly comparable' GAAP measure."  Mot. at 7-10.  But plaintiff does not cite a single case recognizing any such requirement in the 14 years since Regulation G was adopted, even though proxy disclosures routinely include EBITDA and / or free cash flow projections that were provided to a financial advisor for use in its analysis.  *See, e.g.*, Ex. 8 at 131-32, 135-36; Ex. 9 at 138-42; Ex. 10 at 100.

---

[3]   Schedule 14A ("Information required in proxy statement") provides that when a corporation solicits stockholder action with respect to a proposed merger and "a report, opinion or appraisal materially relating to the transaction has been received from an outside party, and is referred to in the proxy statement," the corporation must "furnish the information required by Item 1015(b) of Regulation M-A."  17 C.F.R. § 240.14a-101 at Item 14(b)(6).  Item 1015(b) of Regulation M-A, in turn, requires the corporation to "[f]urnish a summary concerning the [] report, opinion or appraisal," including "the procedures followed; the findings and recommendations; the bases for and methods of arriving at such findings and recommendations; instructions received from the subject company or affiliate; and any limitation imposed by the subject company or affiliate on the scope of the investigation."  17 C.F.R. § 229.1015(b)(6).

There is no case that supports plaintiff's position because it is contrary to the plain language of Regulation G. Subsection (d) of the regulation expressly provides that its requirements do not apply to disclosures like the one at issue in this case:

> This section shall not apply to a non-GAAP financial measure included in disclosure relating to a proposed business combination, the entity resulting therefrom or an entity that is a party thereto, if the disclosure is contained in a communication that is subject to . . . § 229.1015 of this chapter.

17 C.F.R. § 244.100(d). Plaintiff's brief does not even mention this exemption, and it makes no attempt to explain why it does not apply here. Nor is there anything that plaintiff could say: the non-GAAP financial measures at issue (the EBITDA and free cash flow projections) are included in a disclosure related to a proposed business combination (the proposed merger) and entities that are parties thereto (Patterson-UTI and SSE), and the disclosures are contained in a communication (the Proxy) that is subject to Item 1015 of Regulation M-A.

As the SEC Release announcing the final rule explained, as originally proposed, "Regulation G would have applied to disclosures of non-GAAP financial measures that represent projections or forecasts of results of proposed business combination transactions." Ex. 11 at 4. But "several of the comment letters [the SEC] received in response to the proposal argued strongly that Regulation G should not apply to these measures," and the SEC added the "exception" found in subsection (d) to address these concerns. *Id.* A review of the comment letters that the SEC cited in the release (*see id.* at 4 n.16) makes crystal clear that it had this case in mind when it created the exception. One of the cited letters, for example, asked the SEC to ensure that the regulation "would

never apply to the financial analysis of the financial advisor supporting the fairness opinion that is summarized in the proxy statement or registration statement relating to a merger or other business combination transaction," because, "unlike the use of non-GAAP financial measures in earnings releases," "[d]isclosure of non-GAAP financial measures in the context of business combination communications . . . does not have the same risk of misleading investors by 'obscuring GAAP results.'" Ex. 12 at 10.

Plaintiff contends that the SEC has recently "begun to crack down on the widespread use of non-GAAP financial measures in shareholder communications" (Mot. at 8), but even if that were so, the existence of that general regulatory initiative would have no bearing on this case, which fits squarely within the exemption from Regulation G. Plaintiff cites the SEC's Compliance and Disclosure Interpretations regarding Non-GAAP Financial Measures and argues that they reflect "the SEC's tightening policy." *Id.* at 9. In fact, the interpretations directly contradict plaintiff's position on this motion: they expressly recognize the "exemption from Regulation G . . . for non-GAAP financial measures disclosed pursuant to Item 1015 of Regulation M-A," and make clear that that exemption "applies even if such non-GAAP financial measures are included in Securities Act registration statements [or] proxy statements." Ex. 13 at 2 (Question 101.01). Plaintiff once again ignores this critical language.[4]

---

[4]    Plaintiff also relies on a speech given by Mary Jo White in June 2016 (Mot. at 8 n.8), in which she remarked that corporations were going "too far" in emphasizing non-GAAP financial measures in "MD&A, earnings releases, and investor presentations." Ex. 15 at 3. But this case does not concern statements made in a periodic filing or earnings release, and nothing in Chairwoman White's remarks purported to address the disclosure of non-

Moreover, there is no need to speculate about the SEC's view of the disclosures at issue on this motion.   The SEC reviewed preliminary versions of the joint proxy statement and prospectus, sent two comment letters that did not even mention Regulation G, and, after Patterson-UTI and SSE addressed those comments, cleared the filing.  *See* Exs. 5 & 7.  Although not necessarily dispositive, standing alone, "the SEC's review and clearance of the [] Proxy" is entitled to "some weight" and further diminishes plaintiff's prospects for success on the merits of her claim.   *McClendon*, 2012 WL 2036748, at *3; *accord La. Mun. Police Emps.' Ret. Sys.* v. *Cont'l Res., Inc.*, 886 F. Supp. 2d 1255, 1264-66 (W.D. Okla. 2012).

This principle should apply with particular force in this case, because, in one instance, the non-GAAP disclosures that plaintiff identifies in the motion — specifically, the free cash flow projections used in the financial advisors' analyses — were disclosed in the Proxy *at the request of the SEC*.   Comment 4 in the SEC's second comment letter, dated March 3, 2017, stated:

> We note that the board books provided in response to prior comment 8 suggest that Morgan Stanley's analysis relied on free cash flow projections prepared by each of Patterson-UTI and Seventy Seven.   Please include corresponding disclosure or explain why you have omitted this information.

*See* Ex. 6 at 2 (Comment 4).  "In response to the Staff's comment," Patterson-UTI and SSE "revised the disclosure . . . to include the free cash flow projections relied upon by Morgan Stanley & Co. LLC and Piper Jaffray & Co."  Ex. 15 at 2; *see also* Ex. 16 at 112-14 (redline).   Patterson-UTI and SSE did not endeavor to reconcile the non-GAAP

GAAP financial measures in the context of summarizing a financial advisor analysis of a proposed business combination.

financial projections they were adding to the disclosure to "comparable" GAAP-based projections that had never been considered by the financial advisors, because nothing in the SEC's regulations required them to do so, and because that is not what the SEC asked Patterson-UTI and SSE to do.[5]

For all of these reasons, plaintiff is not likely to succeed on the merits of her claim based on the omission of information supposedly required by Regulation G.

> **B.    Plaintiff's claim that the Proxy should have disclosed the number of shares of Patterson-UTI held by Morgan Stanley is unlikely to succeed on the merits.**

Relying exclusively on public information, plaintiff contends that the Proxy should have disclosed that Morgan Stanley held approximately 702,000 shares of Patterson-UTI common stock as of December 31, 2016. Although plaintiff characterizes this stock ownership position as a "significant conflict of interest" (Mot. at 11-12), it amounts to less than 1% of Patterson-UTI's total outstanding shares. Plaintiff does not argue that any SEC rule or regulation required the disclosure of this information, and therefore it is plaintiff's burden to establish that Morgan Stanley's stock ownership position was a "material fact," the disclosure of which was "necessary in order to make the statements [in the Proxy] not false or misleading." 17 C.F.R. § 240.14a-9.

---

[5]    Plaintiff's claim that the projections used in the financial advisors' analyses and disclosed in the Proxy are examples of "fantasy math" (Mot. at 10) is contrary to law and well-established principles of corporate valuation. As one federal court noted, "EBITDA is not an obscure term," but "a financial metric 'that investors commonly rel[y] on.'" *ForteCEO Servs., Inc.* v. *Terra Contracting, LLC*, 2014 WL 4376299, at *3 (N.D. Ill. Sept. 4, 2014) (quoting *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp.2d 158, 179 (S.D.N.Y. 2003)). And it is "normally the case" that discounted cash flow analyses are performed using free cash flow projections. *See, e.g.*, *Gaines* v. *Narachi*, 2011 WL 4822551, at *1 (Del. Ch. Oct. 6, 2011).

Information omitted from a proxy statement is material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc.* v. *Northway, Inc.*, 426 U.S. 438, 449 (1976). The materiality standard protects stockholders. Courts have recognized that "[a] proxy statement need not reveal every detail involved in a transaction," because "[i]f every piece of arguably relevant information needed to be disclosed in a proxy statement, investors and shareholders would be flooded with information and the purposes of disclosure would be defeated." *Lane* v. *Page*, 581 F. Supp. 2d 1094, 1121, 1125 (D.N.M. 2008). As the Supreme Court has explained, requiring too much disclosure "may accomplish more harm than good" by "bury[ing] the shareholders in an avalanche of trivial information" that is "hardly conducive to informed decisionmaking." *TSC Indus.*, 426 U.S. at 448-49.

Plaintiff has failed to establish the materiality of the information in question, and is therefore unlikely to succeed on the merits of this claim, for multiple reasons:

*First*, the Patterson-UTI shares that Morgan Stanley holds do not come close to being material in the context of Morgan Stanley's overall balance sheet. According to its public disclosures, at the end of 2016, Morgan Stanley held $118 billion worth of "corporate equities" and $322 billion of total assets measured at fair value. Ex. 17 at 116. Thus, Morgan Stanley's approximately $19 million position in Patterson-UTI shares represents roughly 0.016% of its portfolio of corporate equities and 0.006% of the overall portfolio.

Plaintiff does not cite a single case suggesting that Morgan Stanley's *de minimis* equity position in Patterson-UTI is material information that was required to be disclosed in the Proxy.  In fact, the law is to the contrary.  In *Kin-Ark Corp.* v. *Boyles*, 593 F.2d 361, 365-66 (10th Cir. 1979), stockholders of Boyles claimed that they had been misled into approving a transaction in which Boyles exchanged all of its assets for shares of Kin-Ark, and specifically alleged that Kin-Ark had failed to disclose that its officers and directors were also investors in a company, Antipodes, in which Kin-Ark had also invested.  The Tenth Circuit rejected the argument that this information was material because it "would have shaken a potential investor's confidence in management's devotion to the interests of its shareholders," and held that Kin-Ark's "de minimis" investment in Antipodes — which amounted to less 0.72% of Kin-Ark's total investments — was "such that a reasonable man, on objective contemplation, would attach no significance . . . in light of the totality of Kin-Ark's activities." *Id.* at 366.

Similarly, in *In re Micromet, Inc. S'holders Litig.*, 2012 WL 681785, at *11 (Del. Ch. Feb. 29, 2012), the Delaware Court of Chancery rejected a claim that a proxy statement related to a proposed merger should have disclosed that the acquired company's financial advisor, Goldman, "holds approximately $336 million in [the buyer's] stock, most of which it holds on behalf of clients."[6]  The court reasoned that "[e]ven considering its total position," Goldman's holdings of the buyer's shares "equal approximately 0.16% of its overall investment holdings," and noted that plaintiffs had

---

[6]   Federal courts routinely cite Delaware decisions as persuasive authority on issues of corporate law. *See, e.g.*, *Tow* v. *Bulmahn*, 2016 WL 1722246, at *14 (E.D. La. Apr. 29, 2016); *Brown* v. *Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1245 (D. Nev. 2008).

failed to present "detailed evidence from which the Court reasonably could infer that the size and nature" of Goldman's holdings "would be likely to impede its ability effectively and loyally to perform its assignment." *Id.* at *11-12. In this case, the stock ownership position that gives rise to the purported conflict is orders of magnitude smaller — both notionally and relative to the overall size of Morgan Stanley's portfolio — and plaintiff has presented no evidence whatsoever suggesting that Morgan Stanley's holdings of Patterson-UTI shares would have been likely to impact the advice it provided to SSE with respect to the proposed merger.

Plaintiff tries to confuse matters by asserting that "[t]he dollar value of Morgan Stanley's holdings in Patterson-UTI . . . exceeds the $7 million fee Morgan Stanley stands to make in connection with the Proposed Merger" (Mot. at 11), but that is not an appropriate comparison. Rather, when assessing the magnitude of the alleged conflict of interest, the more salient question is whether Morgan Stanley would be willing to risk its reputation as an independent financial advisor by giving advice that was contrary to the interests of SSE and its stockholders in the hope of marginally increasing the value of its Patterson-UTI shares. Plaintiff has presented no evidence that this occurred. Nor would it have been economically rational for Morgan Stanley to engage in that sort of conduct, because even a 5% increase in Patterson-UTI's stock price would only increase the value of Morgan Stanley's alleged holdings by about $850,000 — an amount that is significantly less than Morgan Stanley's fee for this engagement, and astronomically less

than Morgan Stanley's net annual revenues.  Ex. 17 at 95 (reporting that Morgan Stanley

had $34 billion of net revenues in 2016).[7]

*Second*, the Proxy made clear that Morgan Stanley "may trade . . . for their own

account or for the accounts of their customers, in debt or equity securities . . . of SSE [or]

Patterson-UTI."   Ex. 2 at 110.   The Delaware Court of Chancery found a similar

disclosure sufficient in *In re Plains Exploration & Production Co. Stockholder

Litigation*, 2013 WL 1909124, at *10 & n.84 (Del. Ch. May 9, 2013), a case, like this

one, in which plaintiffs asserted that a proxy statement related to a proposed merger was

materially misleading because it failed to disclose that the acquired company's financial

advisor (Barclays) had "substantial stock holdings" in the buyer (Freeport).  The court

rejected that argument, observing that plaintiffs had "fail[ed] to explain" how the

"purported conflict[]" was material, and concluding that the proxy statement had

"adequately disclose[d] that Barclays may have holdings in Freeport" in any event.  *Id.* at

*10; *see also In re Volcano Corp. Stockholder Litig.*, 143 A.3d 727, 731 (Del. Ch. 2016)

(disclosing information that "only would change the degree of [the financial advisor's]

---

[7]   Morgan Stanley's purported conflict here is nothing like the advisor conflicts
described in the cases cited by plaintiff, and those cases are therefore inapposite.  *See In
re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 688 (S.D.N.Y. 2004) (purportedly
independent IPO underwriters were allegedly selected because they had issued favorable
analyst reports about the issuer and agreed to give IPO shares to the issuer's officers);
*Goldstein* v. *Bear, Stearns & Co.*, 1988 WL 95135, at *3 (E.D.N.Y. Sept. 7, 1988)
(takeover target's financial advisor was a long-time advisor to a significant stockholder of
the offeror and was still acting as his advisor at the time of the engagement);  *In re Rural
Metro Corp.*, 88 A.3d 54, 106 (Del. Ch. 2014) (acquired company's financial advisor
"designed the [sales] process to serve its own interests," including to obtain a role in an
unrelated acquisition for which the advisor ultimately received a fee in excess of $10
million).

interest" would not "significantly alter[] the total mix of available information regarding . . . [the financial advisor's] interests").

*Finally*, if a particular stockholder who reviewed the Proxy "desired to know the size of [Morgan Stanley's] position in [Patterson-UTI]," that information was ascertainable from public information. *In re Micromet*, 2012 WL 681785, at *12. Plaintiff concedes that her counsel was able to find the information with a standard Bloomberg search (Mot. at 12), and the information is publicly available elsewhere for no charge, including on the NASDAQ's website. *See* Ex. 18 at 2. Thus, while the information is not material and did not need to be included in the Proxy, any stockholder who wishes to learn the size of Morgan Stanley's position could readily do so.[8]

---

[8]  Plaintiff's motion for a preliminary injunction is meritless and should be denied. For the sake of argument, however, any injunctive relief that the Court is inclined to grant should be conditioned on plaintiff posting a substantial bond to protect SSE's stockholders against the risks inherent in a delay of the stockholder vote on this premium transaction. *See, e.g.*, *Coquina Oil Corp.* v. *Transwestern Pipeline Co.*, 825 F.2d 1461, 1461 (10th Cir. 1987) ("[C]onsideration of the imposition of a bond is a necessary ingredient of an enforceable order for injunctive relief.").

## IV. CONCLUSION

For all of these reasons, plaintiff's motion to preliminarily enjoin the vote of SSE's stockholders that is scheduled for April 20 should be denied.

Respectfully submitted:

*s/ Timothy J. Bomhoff*

Timothy J. Bomhoff, OBA # 13172
Patrick L. Stein, OBA #30737
Spencer Smith, OBA #20430
MCAFEE & TAFT A Professional Corporation
Tenth Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102-7103
Telephone:  405.235.9621
Facsimile:  405.235.0439
tim.bomhoff@mcafeetaft.com
spencer.smith@mcafeetaft.com
patrick.stein@mcafeetaft.com

-and-

Paul K. Rowe, NY Bar #1688779 (application for admission pro hac vice forthcoming)
Rachelle Silverberg, NY Bar #2614063 (application for admission pro hac vice forthcoming)
Bradley R. Wilson, NY Bar #4338505 (application for admission pro hac vice forthcoming)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:  212.403.1000
Facsimile:  212.403.2000
PKRowe@wlrk.com
RSilverberg@wlrk.com
BRWilson@wlrk.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that I authorize the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send email notification of such filing to all registered parties on April 5, 2017.

*s/ Timothy J. Bomhoff*
Timothy J. Bomhoff