## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARIA COMEAUX, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| | § | |
| Plaintiff, | § § | |
| | § | |
| v. | § | |
| | § | Case No. 5:17-cv-00191-M |
| SEVENTY SEVEN ENERGY INC., JERRY L. WINCHESTER, VICTOR DANH, ANDREW AXELROD, DOUGLAS J. WALL, DAVID KING, EDWARD J. DIPAOLO, and STEVEN HINCHMAN, | § § § § § § § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES

Timothy J. Bomhoff, OBA # 13172
Patrick L. Stein, OBA #30737
MCAFEE & TAFT
Tenth Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102
Telephone: (405) 552-2339
Facsimile: (405) 228-7339
tim.bomhoff@mcafeetaft.com
patrick.stein@mcafeetaft.com

*Attorneys for Defendants Seventy Seven Energy, Inc., Jerry L. Winchester, Victor Danh, Andrew Axelrod, Douglas J. Wall, David King, Edward J. Dipaolo, and Steven Hinchman*

Of Counsel:

Michael C. Holmes
Craig E. Zieminski
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Telephone: (214) 220-7700
Facsimile: (214) 220-7716
mholmes@velaw.com
czieminski@velaw.com

## <u>TABLE OF CONTENTS</u>

**Page**

I.  SUMMARY OF THE ARGUMENT ......................................................... 1

II.  BACKGROUND ................................................................................ 4

III.  ARGUMENT AND AUTHORITIES ..................................................... 5

    A.  Plaintiff is not entitled to a fee. ................................................... 5

        1.  The PSLRA precludes fees for non-monetary benefits. ................... 5

        2.  Plaintiff failed to confer a substantial benefit on SSE stockholders. ................................................................................ 6

            a.  The Supplemental Disclosures were immaterial. .................... 7

                i.  Unlevered free cash flow projections .......................... 8

                ii.  Peer companies used in the sum-of-the-parts analysis .................................................................. 10

            b.  The Supplemental Disclosures—even if material—did not render other statements in the Proxy misleading. ........... 11

        3.  Plaintiff did not cause the publication of the Supplemental Disclosures. ................................................................................ 14

    B.  Plaintiff's fee request is grossly inflated and should be denied. ................ 15

        1.  The "time and labor required" does not support Plaintiff's fee request. ................................................................................ 15

            a.  Plaintiff obtained no benefit for time spent after March 13. ......................................................................... 16

            b.  The Court should not award Plaintiff fees-on-fees. .............. 16

        2.  Counsel's requested hourly rates are unwarranted and unsupported. ................................................................................ 17

        3.  The lodestar multiple should be zero. ........................................... 18

            a.  The amount involved and the results obtained. ..................... 19

            b.  The undesirability of the case. ............................................. 21

            c.  Rubber-stamp litigation does not warrant a positive multiplier. ......................................................................... 22

            d.  The contingent nature of the engagement does not aid Plaintiff. ........................................................................... 23

            e.  Time limitations do not support Plaintiff's fee request. ....... 24

            f.  Similar cases have awarded no fee. ..................................... 24

IV.   CONCLUSION ...................................................................................................... 25

# INDEX OF AUTHORITIES

## Cases

*Aguinaga v. United Food & Commercial Workers Int'l Union*,
   993 F.2d 1480 (10th Cir. 1993) ............................................................................... 15, 17

*Bell Atlantic v. Twombly*
   550 U.S. 544 (2007) ................................................................................................ 3, 12

*Borruso v. Comm'cns Telesystems Int'l*,
   753 A.2d 451 (Del. Ch. 1999) ....................................................................................... 11

*Brown v. Brewer*,
   2008 WL 6170885 (C.D. Cal. July 14, 2008) ................................................................. 9

*Case by Case v. Unified Sch. Dist. No. 233*,
   157 F.3d 1243 (10th Cir. 1998) ..................................................................................... 25

*City Trading Fund v. Nye*,
   2015 WL 93894 (N.Y. Sup. Ct. Jan. 7, 2015), *rev'd as premature*, 144 A.D.3d 595
   (N.Y. 2016) ...................................................................................................................... 24

*Cooperstock v. Pennwalt Corp.*,
   820 F. Supp. 921 (E.D. Pa. 1993) ................................................................................. 13

*Daubert v. Merrell Dow Pharmaceuticals*,
   509 U.S. 579 (1993) ....................................................................................................... 11

*Douglas v. Witney*,
   No. 3:16-cv-00921-WHO (N.D. Cal. Nov. 7, 2016) ..................................................... 24

*Epstein v. Energy Transfer Partners, L.P.*,
   No. 1:17-cv-00069 (D. Del. Jan. 25, 2017) .................................................................. 22

*Finkel v. Am. Oil & Gas, Inc.*,
   2012 WL 171038 (D. Colo. Jan. 20, 2012) ..................................................... 16, 18, 20

*Fox v. Vice*,
   563 U.S. 826 (2011) ......................................................................................................... 6

*Garcia v. Cordova*,
   930 F.2d 826 (10th Cir. 1991) ........................................................................................ 7

*Garcia v. Kate Spade & Co.*,
   No. 1:17-cv-04177-RMB (S.D.N.Y. June 5, 2017) ....................................................... 23

*Gottlieb v. Barry*,
   43 F.3d 474 (10th Cir. 1994) ......................................................................................... 18

*Greenthal v. Joyce*,
   2016 WL 362312 (S.D. Tex. Jan. 29, 2016) ................................................................. 13

*Grossman v. Novell, Inc.*,
   120 F.3d 1112 (10th Cir. 1997) ........................................................................ 7, 8, 12

*Hawkins v. Memorial Res. Dev. Corp.*,
   No. 4:16-cv-02201 (S.D. Tex. July 22, 2016) .............................................................. 23

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .................................................................................................... 19

*Huddleston v. Colvin*,
   2014 WL 7404138 (E.D. Okla. Dec. 30, 2014) .......................................................... 18

*Hysong v. Encore Energy Partners LP*,
   2011 WL 5509100 (D. Del. Nov. 10, 2011) .......................................................... 12, 13

*IBEW Local 98 Pension Fund v. Cent. Vt. Pub. Serv. Corp.*,
   2012 WL 928402 (D. Vt. Mar. 19, 2012) ............................................................. 12, 13

*In re 3Com S'holders Litig.*,
   2009 WL 5173804 (Del. Ch. Dec. 18, 2009) ................................................................. 9

*In re BEA Sys., Inc. S'holders Litig.*,
   2009 WL 1931641 (Del. Ch. June 24, 2009) ............................................................... 19

*In re Cogent, Inc. S'holder Litig.*,
   7 A.3d 487 (Del. Ch. 2010) ....................................................................................... 7, 10

*In re Covidien PLC Sec. Litig.*,
   No. 1:14-cv-12949-LTS (D. Mass. Aug. 31, 2015) ...................................................... 25

*In re Crestwood Midstream Partners Unitholder Litig.*,
   No. 4:13-cv-01528 (S.D. Tex. May 5, 2014) ............................................................... 24

*In re Hot Topic, Inc. Sec. Litig.*,
   2014 WL 7499375 (C.D. Cal. May 2, 2014) ................................................................ 13

*In re Instinet Grp. S'holders Litig.*,
   2005 WL 3501708 (Del. Ch. Dec. 14, 2005) ............................................................... 23

*In re Netsmart Tech. Inc., S'holders Litig.*,
   924 A.2d 171 (Del. Ch. 2007) ....................................................................................... 9

*In re Radiology Assocs. Inc. Litig.*,
   611 A.2d 485 (Del. Ch. Nov. 1, 1991) ........................................................................ 10

*In re Syntroleum Corp. S'holder Litig.*,
   No. CJ-2013-5807 (Tulsa Cty. Dist. Ct. Dec. 2, 2015) ............................................... 18

*In re Triarc Cos., Inc. S'holders Litig.*,
   2006 WL 903338 (Del. Ch. Mar, 29, 2006) ................................................................ 16

*In re Trulia, Inc. S'holder Litig.*,
   129 A.3d 884 (Del. Ch. 2016) ................................................................................... 1, 21

*In re Walgreen Co. Stockholder Litig.*,
  832 F.3d 718 (7th Cir. 2016) ................................................................... 21

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ........................................................ 4, 15, 19

*Jordan v. Heckler*,
  744 F.2d 1397 (10th Cir. 1984) ............................................................... 19

*Kahan v. Rosenstiel*,
  424 F.2d 161 (3d Cir. 1970) .................................................................... 13

*Klein v. Team Health Holdings, Inc.*,
  No. 3:16-cv-00675 (E.D. Tenn. Dec. 2, 2016),
  *voluntarily dismissed*, Feb. 6, 2017 .................................................. 22, 23

*Kopet v. Esquire Realty Co.*,
  523 F.2d 1005 (2d Cir. 1975) ..................................................................... 9

*Krieger v. LRR Energy, L.P.*,
  No. 4:15-cv-02017 (S.D. Tex. July 14, 2015),
  *voluntarily dismissed,* July 17, 2015 ..................................................... 23

*La. Mun. Police Emps.' Ret. Sys. v. Cont'l Res., Inc.*,
  886 F. Supp. 2d 1255 (W.D. Okla. 2012) ................................................ 10

*Lambert v. Tellabs, Inc.*,
  No. 1:13-cv-07945 (N.D. Ill. July 23, 2015) ........................................... 24

*Lewis v. Anderson*,
  692 F.2d 1267 (9th Cir. 1982) ................................................................. 13

*Malon v. Franklin Fin. Corp.*,
  2014 WL 6791611 (E.D. Va. Dec. 2, 2014) ............................................... 9

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
  11 A.3d 1175 (Del. Ch. 2010) .................................................................... 9

*Masters v. Wilhelmina Model Agency, Inc.*,
  473 F.3d 423 (2d Cir. 2007) .................................................................. 2, 6

*McDonald v. Kinder-Morgan, Inc.*,
  287 F.3d 992 (10th Cir. 2002) ................................................................. 12

*MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*,
  761 F.3d 1109 (10th Cir. 2014) ............................................................... 11

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970) ............................................................................ 6, 17

*Nichting v. DPL Inc.*,
  2011 WL 2892945 (S.D. Ohio July 15, 2011) ....................................... 9, 24

*Paprakis v. Skullcandy, Inc.*,
  2017 WL 2579027 (D. Utah June 14, 2017), *appeal docketed*, No. 17-4114 (10th Cir.
  July 17, 2017) ................................................................................................................ 8, 23, 25

*Phelps v. Delek US Holdings, Inc.*,
  No. 3:17-cv-00910 (M.D. Tenn. June 2, 2017),
  *voluntarily dismissed*, June 29, 2017 .................................................................... 22, 23

*Ramos v. Lamm*,
  713 F.2d 546 (10th Cir. 1983) ...................................................................................... 18

*Raul v. Astoria Fin. Corp.*,
  2014 WL 2795312 (Del. Ch. June 20, 2014) ................................................................ 13

*Rosenbaum v. MacAllister*,
  64 F.3d 1439 (10th Cir. 1995) ....................................................................... 6, 13, 15, 19

*Savoie v. Merchs. Bank*,
  166 F.3d 456 (2d Cir. 1999) .......................................................................................... 17

*Slater v. AG Edwards & Sons, Inc.*,
  719 F. 3d 1190 (10th Cir. 2013) ................................................................................ 7, 12

*Smith v. Robbins & Myers, Inc.*,
  969 F. Supp. 2d 850 (S.D. Ohio 2013) ........................................................................... 9

*State of Wis. Inv. Bd. v. Bartlett*,
  2002 WL 568417 (Del. Ch. Apr. 9, 2002), *aff'd*, 808 A.2d 1205 (Del. 2002).............. 16

*Syrus v. Bennett*,
  2011 WL 2443710 (W.D. Okla. June 17, 2011).............................................................. 18

*TSC Indus. Inc. v. Northway*,
  426 U.S. 438 (1976)..................................................................................................... 2, 7

*United Food & Commercial Workers Union Local 880 Pension Fund v. Chesapeake*
  *Energy Corp.*,
  774 F.3d 1229 (10th Cir. 2014) .................................................................................... 12

*United States v. Smith*,
  155 F.3d 1051 (9th Cir. 1998) ........................................................................................ 9

## Statutes

15 U.S.C. § 78o ................................................................................................... passim

15 U.S.C. § 78u-4(a)(6) ................................................................................................ 2, 6

15 U.S.C. § 78u-4(b)(1)(b) ............................................................................................. 12

17 C.F.R. § 240.14a-9(a) ............................................................................................... 12

## I.   SUMMARY OF THE ARGUMENT

Although Plaintiff and her counsel ("Counsel") abandoned nearly all of their boilerplate strike suit without engaging in any meaningful litigation efforts, Plaintiff now requests $380,000 in attorneys' fees for purportedly conferring a "substantial benefit" on the stockholders of Seventy-Seven Energy, Inc. ("SSE").  Far from providing any benefit whatsoever, this lawsuit was solely a burden on SSE's stockholders, who indirectly (through their post-merger equity stake) bear the costs of this suit and any fee award.  This lawsuit exemplifies the recent lament of a Delaware court that "far too often such litigation serves no useful purpose for stockholders. Instead, it serves only to generate fees for certain lawyers," who (like Counsel) serially file meritless, cookie-cutter lawsuits challenging mergers in hopes of garnering a "cost-of-defense" settlement or, failing that, a fee award for a few weeks of half-hearted litigation.  *In re Trulia, Inc. S'holder Litig.*, 129 A.3d 884, 891-92 (Del. Ch. 2016).  Plaintiff's and Counsel's coercive, pre-merger tactics should be condemned, and not rewarded.

Plaintiff challenged the now-completed merger between Patterson-UTI Energy, Inc. ("Patterson") and SSE (the "Merger"), which provided an astonishing 103% premium to SSE stockholders like Plaintiff and was approved by 99.6% of the votes cast at the SSE stockholder meeting.  Prior to the closing of the Merger, Plaintiff alleged, among other things, that the Merger provided inadequate consideration to SSE stockholders.  Further, although Defendants published a 400-page proxy statement (the "Proxy") and various other sources of information concerning the Merger, Plaintiff alleged that the Proxy failed to disclose twelve additional tidbits of information.  After receiving comments from the

Securities and Exchange Commission (the "SEC"), Defendants filed an amended Proxy that disclosed two of these twelve items.  Specifically, the Proxy amendment added (1) two "free cash flow" line-items to two of its charts of financial projections and (2) a sentence to clarify that the disclosed list of "comparable companies" that Morgan Stanley (SSE's financial advisor) used for one of its analyses was also used for its "sum of the parts" analysis (the "Supplemental Disclosures").  Shortly thereafter, Plaintiff and her Counsel abandoned their remaining claims, conveniently took credit for the Supplemental Disclosures, and sought a fee award.  Plaintiff's entire case for fees is based on her luck that the SEC made two comments which overlapped with two of the twelve alleged omissions in the Complaint.  For four primary reasons, the Court should deny Plaintiff's motion for fees.

**First**, Plaintiff has undisputedly obtained no monetary benefit, and the Private Securities Litigation Reform Act ("PSLRA") does "not allow for the computation of fees on the basis of...non-damages items." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 438 (2d Cir. 2007); 15 U.S.C. § 78u-4(a)(6).  The Supplemental Disclosures are precisely the sort of "non-damages items" that cannot form the basis of a fee request.

**Second**, the Supplemental Disclosures do not merit a fee award because Plaintiff and her Counsel have not established (and cannot establish) that the omitted information was both (1) material and (2) rendered specific disclosures in the Proxy misleading.

Materiality. The Supplemental Disclosures did not "significantly alter[] the 'total mix' of information made available" concerning the Merger. *TSC Indus. Inc. v. Northway*, 426 U.S. 438, 449 (1976).  Numerous courts have rejected nearly identical disclosure

allegations on materiality grounds.  First, the free cash flow projections added little because Defendants had already disclosed revenue and EBITDA projections, and free cash flow was simply a derivative line-item of the EBITDA projections.  Second, the identity of the companies used for one of Morgan Stanley's analyses—listed two pages earlier—was a minor detail in a 13-page summary of these analyses, particularly where (as here) there is no contention that Morgan Stanley selected inappropriate companies for this analysis.

Misleading statements. Plaintiff scarcely even attempts to establish, as she must, that these omitted details changed the truthfulness or accuracy of specific statements in the Proxy.  Plaintiff simply uses the term "misleading" in conclusory fashion, which fails under *Twombly*, let alone the PSLRA, as many courts have held in rejecting analogous claims.

**Third**, Plaintiff did not cause the Supplemental Disclosures to be published. Defendants added these details (among others) to the Proxy at the request of the SEC, not because of Plaintiff.[1]  Plaintiff attempts to take credit for the SEC's request by surmising that Plaintiff caused the SEC to make this request.  But Plaintiff's only support for this theory is that the SEC was *aware* of this lawsuit, which does not mean that Plaintiff *caused* the SEC to request (let alone Defendants to make) the Supplemental Disclosures.

**Fourth**, even if Plaintiff had conferred a substantial benefit, which she surely did not, her Counsel would still be entitled to no fee.  Counsel claims that they spent 242.2

---

[1] As explained below, *see infra* Part III.A.3, Defendants provided board presentations to the SEC in response to the SEC's letter dated February 17, 2017.  Based on those board presentations, the SEC then requested additional information regarding free cash flows. *See* Ex. 3, cmt. 4.  Thus, this lawsuit did not cause the SEC to request or the Defendants to make the Supplemental Disclosure regarding free cash flow.

hours on this matter, but they incurred only 77.2 hours *prior to the publication of the Supplemental Disclosures*.  Counsel's remaining hours are not compensable because they indisputably yielded no benefit to the stockholders.  Plaintiff also requests a "multiplier" of 3.0, *i.e.*, she wants 300% of Counsel's already-inflated hourly rates.  The *Johnson* factors do not support such an extraordinary result and, instead, weigh in favor of a zero multiplier.  Most notably, even taking Plaintiff's dubious claims at face value, the purported "results obtained" were (at most) extremely modest.  Plaintiff and her Counsel abandoned their allegations concerning the terms of the Merger and ten of their twelve disclosure violations.  Worse yet, they abandoned these claims immediately after receiving the SEC letter that they use to argue that Plaintiff "caused" the Supplemental Disclosures.  In other words, as soon as Counsel had a shred of paper to hold up in support of a fee request, the remainder of the lawsuit became irrelevant to them.  The Court should not reward Counsel's nuisance litigation, which is designed solely to generate fees, and it should deny Plaintiff's motion for fees in its entirety.

## II.   BACKGROUND

A background of the Merger, this lawsuit, the Supplemental Disclosures, and this fee motion is set forth above.  *See supra* § I.  A timeline of selected events is as follows:

| Date | Event |
|------|-------|
| 12/12/16 | Patterson and SSE announce the Merger, in which SSE stockholders would receive Patterson stock in exchange for their SSE stock. |
| 1/23/17 | Patterson and SSE file a preliminary proxy. |
| 2/17/17 | The SEC sends a letter with its first round of comments to the proxy.  Ex. 1. |
| 2/22/17 | Plaintiff files her Complaint.  *See* Compl. (Feb. 22, 2017) [Doc. 1]. |
| 2/23/17 | Patterson and SSE file an amended proxy, declining to moot any of Plaintiff's allegations.  *See infra* Part III.B.3.a (chart comparing disclosures to requests). |

| Date | Event |
|------|-------|
| 3/3/17 | The SEC sends a letter with its second round of comments to the Proxy (the "March 3rd Letter").  Ex. 3. |
| 3/13/17 | Patterson and SSE file a second amended proxy with the Supplemental Disclosures and other details requested in the March 3rd Letter.  *See* Ex. 2, an excerpted redline of the 2/23/17 and 3/13/17 preliminary proxies.  As of this date, Counsel have billed 77.2 hours to this matter. |
| 3/14/17 | Counsel review the second amended proxy and *begin* drafting the Motion for a Temporary Restraining Order and Preliminary Injunction (the "P.I. Motion"). |
| 3/22/17 | The SEC declares the second amended proxy effective, and it subsequently becomes the definitive Proxy.  *See* Ex. 4, Proxy. |
| 3/28/17 | Plaintiff files the P.I. Motion, which focuses exclusively on disclosure claims other than the Supplemental Disclosures.  *See* Pl.'s Br. [Doc. 4.].  It is the first docket entry since the day Plaintiff filed her Complaint. |
| 4/5/17 | Defendants submit their response to the P.I. Motion.  *See* Resp. Br. [Doc. 9]. |
| 4/10/17 | Plaintiff withdraws her P.I. Motion and strikes the April 14 hearing.  She and her Counsel claim they are withdrawing the P.I. Motion because they received the March 3rd Letter as an exhibit to Defendants' response brief, and that the March 3rd Letter provides a basis for seeking attorneys' fees.  *See* Notice [Doc. 18]. |
| 4/20/17 | The Merger is approved by stockholders of both companies. *See* Ex. 5, SSE 8-K, Apr. 20, 2017. |
| 5/25/17 | Plaintiff dismisses her lawsuit.  *See* Stip. of Dismissal [Doc. 20]. |
| 6/28/17 | Plaintiff files her Opening Brief in support of her fee motion ("Op. Br.").  Counsel purports to have spent 242.2 hours on this matter.  *See* Op. Br. at 16. |

## III.   ARGUMENT AND AUTHORITIES

### A.   Plaintiff is not entitled to a fee.

#### 1.   The PSLRA precludes fees for non-monetary benefits.

The PSLRA prohibits Plaintiff's request to obtain a fee award for non-monetary stockholder benefits.  Under a section of the statute applicable to Securities Exchange Act class action lawsuits, "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of *the amount of any damages and prejudgment interest actually paid to the class*."  15 U.S.C. § 78u-4(a)(6) (emphasis added).  Based on this provision, a district court rejected a fee award where, like

here, the only "benefits" allegedly obtained were supplemental disclosures in a proxy statement: "plaintiffs have not received a monetary judgment, so federal law clearly precludes them from seeking attorneys' fees based on [an] alleged Securities and Exchange Act violation." *Mostaed v. Crawford*, 2012 WL 3947978, at *7 (E.D. Va. Sept. 10, 2012); *see also Masters*, 473 F.3d at 438.  Because Plaintiff pursued a class action subject to the PSLRA but failed to obtain any monetary benefit, her Counsel are not entitled to fees.

### 2.    Plaintiff failed to confer a substantial benefit on SSE stockholders.

Even if the PSLRA allowed fees for non-monetary relief, Counsel are not entitled to fees because Plaintiff's mooted claims did not confer a substantial benefit on SSE stockholders.  Under the American Rule, each party is required "to bear his own litigation expenses, including attorney's fees, regardless whether he wins or loses." *Fox v. Vice*, 563 U.S. 826, 832 (2011).  There is a common law exception to the American Rule in Section 14(a) cases for stockholders "who have established a violation of the securities laws" and created a "substantial benefit" for stockholders.  *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 389-90 (1970); *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1444 (10th Cir. 1995).  The Supplemental Disclosures[2] were not a "substantial benefit," and Plaintiff has not "established a violation of the securities laws," because these omissions (a) were not material and (b) did not render anything in the Proxy misleading.

---

[2] Defendants address only the Supplemental Disclosures in this brief, as Plaintiff abandoned the remainder of her claims and does not contend that these claims conferred any benefit on SSE's stockholders.  Plaintiff's other claims are equally flawed.

### a.     The Supplemental Disclosures were immaterial.

The Supplemental Disclosures did not provide a substantial benefit to SSE stockholders because these disclosures were immaterial.  To be material, there must be "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus.*, 426 U.S. at 449.  The materiality standard was "deliberately…not set…too low because of a concern that a minimal standard would result in avalanches of information that would bury stockholders in trivia." *Garcia v. Cordova*, 930 F.2d 826, 829 (10th Cir. 1991); *see also Slater v. AG Edwards & Sons, Inc.*, 719 F.3d 1190, 1197 (10th Cir. 2013) (noting the Tenth Circuit "do[es] not hesitate to dismiss securities claims" where "alleged misstatements or omissions are plainly immaterial").  This standard is particularly onerous for a plaintiff to meet where, as here, the "total mix" of information regarding the Merger was extensive.[3]  The Proxy contained 400 pages of information,[4] and SSE provided

---

[3] *See Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997) ("Whether information is material also depends on other information already available to the market…."); *In re Cogent, Inc. S'holder Litig.*, 7 A.3d 487, 511 (Del. Ch. 2010) (finding that omitted information was immaterial "given the level of detail already provided"). Delaware law uses the same *TSC Industries* materiality standard as federal law.  *Id.* at 509.

[4] The Proxy contains, *inter alia*, (i) eleven pages of frequently asked questions (Ex. 4, Proxy at 1-10); (ii) an eight page summary of the considerations taken into account by Patterson's and SSE's directors in evaluating and approving the Merger (*id.* at 83-86, 95-98); (iii) a twenty-three page summary of Piper Jaffray's (Patterson's financial advisor) and Morgan Stanley's financial analyses of the Merger (*id.* at 86-95, 98-110); (iv) four pages of historical financial statements concerning the parties to the Merger (*id.* at 25-28); (v) ten pages of pro forma financial statements and information concerning the post-merger entity (*id.* at 158-67); (vi) a twenty-eight page explanation of risk factors associated with the parties and the Merger (*id.* at 35-62); (vii) an eleven page description of the events leading up to the Merger (*id.* at 73-83); (viii) five pages of financial forecasts prepared by the parties in connection with their evaluation and approval of the Merger (*id.* at 110-14);

additional presentation materials to stockholders.  Particularly in light of this wealth of information, the Supplemental Disclosures are immaterial as a matter of law.

### i.      Unlevered free cash flow projections

The addition of Patterson's and SSE's free cash flow projections to the Proxy's projections charts was not material.  In the initial Proxy, Defendants had already disclosed projections for similar financial metrics, including revenue and EBITDA; the unlevered free cash flow projection is merely a subset of the EBITDA projection.  *See* Ex. 4, Proxy at 112 (defining "Unlevered free cash flow" as "Adjusted EBITDA less estimated income taxes…, capital expenditures [and] increases in net working capital.").  In light of the extensive pre-existing projections, the inclusion of the four lines of free cash flow projections did not "significantly alter[] the 'total mix' of information available." *Grossman*, 120 F.3d at 1119 (granting dismissal on materiality grounds).  Indeed, courts have rejected identical claims where, as here, the proxy already disclosed relevant financial projections, and plaintiffs were merely seeking the disclosure of additional line-items to those projections:

- In *Paprakis*, a district court recently rejected plaintiffs' motion for attorneys' fees, which was based on the disclosure of previously missing free cash flow projections. *Paprakis v. Skullcandy, Inc.*, 2017 WL 2579027, at *4-5 (D. Utah June 14, 2017), *appeal docketed*, No. 17-4114 (10th Cir. July 17, 2017).  The court held that plaintiffs failed to confer a substantial benefit on stockholders because the "***supplemental disclosures were consistent with the other extensive financial disclosures*** included in [the company's] 60 single-spaced pages of original disclosures regarding the transaction." *Id.* (emphasis added).

---

(ix) a twenty-five page description of the Merger's terms (*id*. at 126-50); (x) a copy of the Merger Agreement (*id*. at Annex A); and (xi) a copy of Piper Jaffray's and Morgan Stanley's fairness opinions (*id*. at Annexes C-D).

- In *Malon*, a district court rejected claims that a proxy "omi[tted] projected unlevered free cash flows" because the proxy already included "net income" projections. *Malon v. Franklin Fin. Corp.*, 2014 WL 6791611, at *6 (E.D. Va. Dec. 2, 2014).

- In *3Com*, "cash flow projections" were immaterial as a matter of law where the proxy already disclosed "summarized projections" of revenue and earnings. *In re 3Com S'holders Litig.*, 2009 WL 5173804, at *2-3 & n.11 (Del. Ch. Dec. 18, 2009).

Plaintiff's primary authorities involved different factual scenarios and meaningful disclosures. *See* Op. Br. at 7, 11-12.[5] Plaintiff's other authorities involved cash-out mergers, not stock-for-stock mergers like the one at issue; thus, accurate cash projections were deemed material in light of the fact that stockholders were "being asked to accept a one-time payment of cash and forsake any future interest in the firm."[6] In contrast, the free cash flow Supplemental Disclosure was not material.

---

[5] *Kopet v. Esquire Realty Co.*, 523 F.2d 1005, 1007 (2d Cir. 1975) (plaintiff caused limited partnership to issue financial statements required by the partnership agreement, "for the first time since [the partnership] was created"); *Brown v. Brewer*, 2008 WL 6170885, at *4-5 (C.D. Cal. July 14, 2008) (the proxy failed to include *any* internal financial projections, revenues of the company's highest performing asset, or the company's potential liability stemming from pending lawsuits); *Helwig v. Vencor, Inc.*, 251 F.3d 540, 562-63 (6th Cir. 2001) (defendants released "rosy" projections despite knowing that legislation was "nearing its final stages" that "could capsize those projections").

[6] *In re Netsmart Tech. Inc., S'holders Litig.*, 924 A.2d 171, 177 (Del. Ch. 2007); *Nichting v. DPL Inc.*, 2011 WL 2892945, at *4 (S.D. Ohio July 15, 2011); *Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 858-59, 874 (S.D. Ohio 2013); *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1178-79 (Del. Ch. 2010) (discussing the "centrality of this issue" in a cash-out merger). Plaintiff's final case is a red herring, as the Ninth Circuit simply commented on the importance of a company's internal projections when such projections were used by a company executive to complete insider trades. *United States v. Smith*, 155 F.3d 1051, 1064 & n.20 (9th Cir. 1998).

### ii.      Peer companies used in the sum-of-the-parts analysis

For four reasons, the Supplemental Disclosure regarding the peer companies that Morgan Stanley utilized for its sum-of-the-parts analysis was not material.  Op. Br. at 13. First, the Proxy already disclosed the identity of the companies Morgan Stanley used in completing its comparable company analysis.  *See* Proxy at 100-101.  In the amended Proxy, Defendants merely added a single sentence clarifying that the "comparable companies" listed on the preceding two pages were also the companies Morgan Stanley used in its sum-of-the-parts analysis.  *See id.* at 102.  This is unremarkable, as both "comparable company" and "sum of the parts" are valuation methodologies that provide an implied value of a company by comparing it to similar companies.  *Id.* at 100, 102.

Second, "courts have rejected disclosure claims based on the failure to disclose underlying details supporting a fairness opinion."  *La. Mun. Police Emps.' Ret. Sys. v. Cont'l Res., Inc.*, 886 F. Supp. 2d 1255, 1264-65 (W.D. Okla. 2012) (denying injunction where the proxy contained "sufficient detail" about a fairness opinion).  "[I]t is always possible to request just one more piece of information," even where a defendant "has disclosed a plethora of facts relating to [an advisor's] analysis."  *In re Cogent*, 7 A.3d at 511.  Thus, where, like here, Defendants have provided a "fair summary of the substantive work performed by the investment bankers," any additional details are immaterial.  *Id.*

Third, as Plaintiff concedes, the disclosure of the identities of the companies used in these comparative valuation methodologies can only be material if the "companies used were dissimilar to [the] company being valued."  Op. Br. at 14; *see also In re Radiology Assocs. Inc. Litig.*, 611 A.2d 485, 490 (Del. Ch. 1991).  Here, Plaintiff does not (and cannot)

allege that Morgan Stanley used inappropriate companies in completing its analyses, let alone that the use of improper comparables led to a flawed sum-of-the-parts analysis.

Fourth, the cases cited by Plaintiff are inapposite, as they all involve *Daubert*-style challenges to an expert's use of comparable companies, not alleged proxy omissions. *See, e.g., Borruso v. Comm'cns Telesystems Int'l*, 753 A.2d 451, 456 (Del. Ch. 1999).

In sum, it strains credulity for Plaintiff to argue that stockholders could not "meaningfully assess the fairness of the Merger" without the information provided in the Supplemental Disclosures. Op. Br. at 5. Indeed, Plaintiff concluded that the Merger was unfair *prior* to receiving these disclosures. Compl. ¶ 3. If this Court holds that such granular details are material, it will "do more to invite information overload than [to] materially benefit" stockholders. *MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*, 761 F.3d 1109, 1117 (10th Cir. 2014).

### b. The Supplemental Disclosures—even if material—did not render other statements in the Proxy misleading.

In addition to establishing the materiality of the Supplemental Disclosures, Plaintiff must, but fails to, establish that the omitted information rendered other statements in the Proxy misleading. Section 14(a) prohibits the dissemination of a proxy "which omits to state any material fact *necessary in order to make the statements therein not false or misleading*…." 17 C.F.R. § 240.14a-9(a) (emphasis added). "[T]he omission of information," even if material, "is actionable only if the omission was necessary to make something in the Registration Statement not misleading." *United Food & Commercial*

*Workers Union Local 880 Pension Fund v. Chesapeake Energy Corp.*, 774 F.3d 1229, 1242

(10th Cir. 2014) (construing analogous section); *Grossman*, 120 F.3d at 1125.[7]

Under the PSLRA, Plaintiff must "specify each statement alleged to have been

misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-

4(b)(1)(b).  A statement is misleading only if the omission "affect[s] the truthfulness or

accuracy of the" statement.  *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 998 (10th

Cir. 2002); *Slater*, 719 F.3d at 1201 ("[T]he test for whether a statement is misleading is

not whether in retrospect an investor might have wanted to know the omitted information,

but whether additional material information was necessary at the time to make a statement

reflect the true state of affairs.").  This standard is satisfied only if the omitted facts "alter

the meaning of the statements" identified by Plaintiff.  *McDonald*, 287 F.3d at 998–99.

With respect to the free cash flow projections, Plaintiff simply uses the term

"misleading" in boilerplate fashion without explaining *how* or *why* any statements were

misleading.  *See* Op. Br. at 11-12.  Conclusory labels are insufficient under *Twombly*, let

alone the PSLRA.  *See Hysong v. Encore Energy Partners LP*, 2011 WL 5509100, at *7

(D. Del. Nov. 10, 2011) (dismissing Section 14 claims where plaintiff relied on "conclusory

statements" that the omitted information rendered the proxy "materially misleading").

Courts have rejected highly analogous Section 14(a) claims based on this deficiency:

- In *IBEW Local 98*, plaintiffs alleged "that Defendants selectively disclosed only
  portions of [the company's] projections." *IBEW Local 98 Pension Fund v. Cent.
  Vt. Pub. Serv. Corp.*, 2012 WL 928402, at *11 (D. Vt. Mar. 19, 2012).  The court

---

[7] The lone exception to this rule governs omissions of information that are required
by regulation.  Plaintiff does not, and cannot, allege that this exception applies.

dismissed because plaintiffs "do not identify any statements in the Proxy Statement which are rendered false or misleading by virtue of those omissions." *Id* at *12 .

- In *Hysong*, the plaintiff alleged that the defendants failed to disclose "unlevered free cash flows" in the proxy's "financial projections." *Hysong*, 2011 WL 5509100, at *3. The court dismissed because "[a] plaintiff's desire to know information…is not enough to state a claim under Section 14(a)….He must point to a statement that is…made misleading by operation of a material omission." *Id.* at *8.

- In *Hot Topic*, the plaintiff alleged that the defendants disclosed revenue and EBITDA projections but not "unlevered free cash flow" projections. *In re Hot Topic, Inc. Sec. Litig.*, 2014 WL 7499375, at *8 (C.D. Cal. May 2, 2014). The district court explained that these allegations were "insufficient to maintain a § 14(a) claim" *unless* "the omitted details prevented shareholders from realizing" the "inaccuracy of the projections" that were previously disclosed. *Id.* at *9-10.

Plaintiff fares even worse with her allegations concerning Morgan Stanley's sum-of-the-parts analysis, as she does not even attempt to argue that this omission rendered anything in the Proxy misleading. *See* Op. Br. at 13-14. At most, Plaintiff has argued that the Supplemental Disclosures *supplemented* the information in the Proxy, not that they *altered the meaning of* the information in the Proxy. This is insufficient. *See Greenthal v. Joyce*, 2016 WL 362312, at *5 (S.D. Tex. Jan. 29, 2016) (rejecting Section 14(a) claims where "Plaintiff simply requests additional information").[8]

---

[8] For the same reasons that Plaintiff has not conferred a "substantial benefit," she has also failed to allege a "meritorious claim" (*i.e.*, a claim that could survive dismissal). Plaintiff half-heartedly surmises (Op. Br. at 14-15) that the Tenth Circuit might not adopt the "meritorious claim" requirement found in nearly every jurisdiction (including many cases cited by Plaintiff). *See, e.g., Kahan v. Rosenstiel*, 424 F.2d 161, 167 (3d Cir. 1970); *Lewis v. Anderson*, 692 F.2d 1267, 1270–71 (9th Cir. 1982); *Cooperstock v. Pennwalt Corp.*, 820 F. Supp. 921, 923–24 (E.D. Pa. 1993); *see also, e.g., Raul v. Astoria Fin. Corp.*, 2014 WL 2795312, at *7 (Del. Ch. June 20, 2014). It is nonsensical (and telling) for Plaintiff to suggest that this Circuit would permit a fee award for *meritless* claims. However, it is unnecessary to resolve this issue, as this Circuit undisputedly requires a "substantial benefit" (*Rosenbaum*, 64 F.3d at 1444), which overlaps with the "meritorious claim" requirement in this matter since the value of the benefit turns on whether the

### 3.    Plaintiff did not cause the publication of the Supplemental Disclosures.

The SEC, not Plaintiff, caused Defendants to include the Supplemental Disclosures in the Proxy.   On March 3, 2017, the SEC requested that Defendants include the Supplemental Disclosures and other details in the next Proxy amendment.  *See* Ex. 3 at 1.[9] On March 13, 2017, Defendants replied, "*[i]n response to the Staff's comment*, we have revised the disclosure…as requested."   Ex. 6, at 2 (emphasis added).[10]   Because the Supplemental Disclosures "were not made because of the plaintiffs' efforts but rather because the [SEC] requested them," Plaintiff's request for fees should be denied.  *Mostaed*, 2012 WL 3947978, at *10 (denying request for fees on causation grounds).

Plaintiff attempts to take credit for the March 3rd Letter by arguing that the "SEC reviewed Plaintiff's complaint" and "determined that certain disclosure deficiencies Plaintiff identified in her complaint were material and needed to be addressed by Defendants."  Op. Br. at 4.  Plaintiff offers no support for this theory: the fact that the March 3rd Letter separately referenced this lawsuit is not evidence that she *caused* the SEC to request the Supplemental Disclosures.   Further, the SEC sought *no information* regarding ten out of the twelve alleged omissions that Plaintiff identified in her Complaint.

---

Supplemental Disclosures were material and rectified any misleading statements.

[9] The fact that the SEC asked Defendants to include the Supplemental Disclosures in an amended Proxy (and that Defendants found it easier to comply than to debate these items and delay the merger) does not render this information material.  *See Chang v. Accelerate Diagnostics, Inc.,* 2016 WL 3640023, at *6-7 (D. Ariz. Jan. 28, 2016).

[10] Plaintiff filed her Complaint on February 22.  Op. Br. at 3.  Patterson and SSE filed an amended preliminary proxy on February 23 *that did not address any of the alleged disclosure deficiencies identified in the Complaint.  See infra* Part III.B.3.a.  Patterson and SSE only added the Supplemental Disclosures after receiving the March 3rd Letter.

In reality, the SEC explained that it sought information regarding free cash flow in response to the board presentations Defendants provided at the SEC's request in its February 17th letter.  *See* Ex. 3, cmt. 4; Ex. 1, cmt. 8.  There is no causation here, regardless of which party has the burden.

**B.      Plaintiff's fee request is grossly inflated and should be denied.**

The fee that Plaintiff requests is grossly excessive such that Plaintiff should be awarded no fee.  "[I]n the absence of a statute or enforceable contract, attorney fees should be awarded sparingly."  *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1480, 1485 (10th Cir. 1993).  When determining attorneys' fees awards, "the court must consider the twelve *Johnson* factors."  *Rosenbaum*, 64 F.3d at 1445.[11]  Plaintiff seeks a staggering $380,000 of fees in this case by multiplying (1) an exaggerated number of 242.2 hours, (2) unsupportable hourly rates up to $775 per hour, and (3) an unwarranted multiplier of 3.  At a minimum, the Court should reduce each of these three factors.

**1.      The "time and labor required" does not support Plaintiff's fee request.**

Counsel's purported number of hours (242.2) is inflated in three primary ways.

---

[11] The twelve *Johnson* factors are: the time and labor required, the novelty and difficulty of the questions, the skills required to property perform the legal services, the preclusion of other employment by the attorney due to the acceptance of the case, the customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, the "undesirability" of the case, the nature and length of the professional relationship with the client, and awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

### a.      Plaintiff obtained no benefit for time spent after March 13.

First, Plaintiff can recover fees for, at most, the 77.2 hours that Counsel billed before

Defendants published the Supplemental Disclosures on March 13.  Courts have rejected

similar attempts to collect fees for time spent following the publication of supplemental

disclosures where, as here, that time yielded no incremental benefit:

- "The plaintiffs' counsel are only entitled to fees" for "their litigation efforts undertaken before the release of the [supplemental] disclosures."  *In re Triarc Cos., Inc. S'holders Litig.*, 2006 WL 903338, at *2 (Del. Ch. Mar, 29, 2006).

- "[The] billing records indicate that only $234,063 of [plaintiffs' counsel's] fees (out of about $400,000 of fees in total time) were incurred *before* January 31, the date of the supplemental proxy disclosures. Thus, [counsel's] fees billed after January 31 related to [other claims] that failed.  [Counsel's] post-January 31 fees thus do not relate to the therapeutic benefit and, consequently, do not warrant an award payable by the company."  *State of Wis. Inv. Bd. v. Bartlett*, 2002 WL 568417, at *5 (Del. Ch. Apr. 9, 2002), *aff'd*, 808 A.2d 1205 (Del. 2002).

*See also Finkel v. Am. Oil & Gas, Inc*., 2012 WL 171038, at *4 (D. Colo. Jan. 20, 2012)

(holding that counsel should not be compensated for "time spent on claims that they

abandoned").  Similarly, the SSE stockholders received no benefit after the March 13

Supplemental Disclosures—nor has Plaintiff articulated one.  She abandoned her claims

regarding the terms of the Merger and her non-mooted disclosure claims.  The Court should

thus limit any fee recovery to the 77.2 hours billed on or before the March 13 Supplemental

Disclosures, as all remaining hours indisputably led to no additional stockholder benefit.

### b.      The Court should not award Plaintiff fees-on-fees.

Second, Plaintiff impermissibly includes 64.6 hours spent seeking attorneys' fees.

Fees-on-fees are sometimes permitted in "statutory fee-shifting" cases but are expressly

prohibited in "common fund" cases.  *See Savoie v. Merchs. Bank*, 166 F.3d 456, 461 (2d

Cir. 1999).  The Court should apply the fees-on-fees prohibition to this matter because Plaintiff's fee application is brought under the common law "common benefit" (or "substantial benefit") doctrine, which "originates from, and is based on, the same rationale as the common fund exception." *Aguinaga*, 993 F.2d at 1483.

Further, the rationale for disallowing fees-on-fees in common fund cases applies equally here.  In statutory fee-shifting cases, fees-on-fees are permitted because the beneficiaries (*e.g.*, employees in statutory employment discrimination suits) do not have to bear the cost of the fee award.  By contrast, fees-on-fees are not permitted in common fund cases because the beneficiaries (*e.g.*, stockholders in a lawsuit that yields a monetary benefit) would have to pay for these fees.  *See Savoie*, 166 F.3d at 461.  Here, the stockholders would effectively pay for any fees-on-fees that Defendants are ordered to pay because a corporation is owned by its stockholders.  *See, e.g., Mills*, 396 U.S. at 395-97.

Finally, Counsel spent 25% of their time on Plaintiff's fee brief, totaling 64.6 hours. *See* Monteverde Decl. at Ex. A (43.75 of 174.5 hours spent on fee brief) [Doc. 24-1]; Copeland Decl. at Ex. A (20.8 of 67.7 hours spent on fee brief) [Doc. 25-1].  Indeed, Counsel spent more time drafting their fee brief than the Complaint (35.2 hours) or the preliminary injunction brief (44.6 hours).  *Id.*  The Court should not reward Counsel for spending more time on their fee brief than any other aspect of this litigation.

### 2.      Counsel's requested hourly rates are unwarranted and unsupported.

The $775 and $500 hourly rates that Plaintiff seeks for her New York Counsel are not warranted.  Despite the Tenth Circuit's rule that "[t]he fee rates of the local area should be applied even when the lawyers seeking fees are from another area," Plaintiff provided

no evidence regarding comparable Oklahoma rates. *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). Instead, Plaintiff relies on inapposite case law to wrongly claim that Oklahoma courts have approved hourly rates similar to the ones she requests here:

- In *Syrus*, the Court awarded $500/hour as the *post-multiplier* fee. *Syrus v. Bennett*, 2011 WL 2443710, at *1 (W.D. Okla. June 17, 2011).

- The fees in *Huddleston* and *Syntroleum* were based on a percentage of the monetary benefit conferred on the plaintiff/class, not hourly rates.[12]

Plaintiff also failed to substantiate her Counsel's purported hourly rates. She refers in conclusory fashion to their "regular hourly rates" but provides no evidence that anyone has ever hired Counsel at these hourly rates.[13] Op. Br. at 17. Plaintiff also points to hourly rates charged by Defendants' attorneys, but rates charged by defense counsel are irrelevant because they have market-based support—clients regularly pay these hourly rates to these defense counsel, unlike Counsel's purported rates. *See Finkel*, 2012 WL 171038, at *4.

### 3.     The lodestar multiple should be zero.

By requesting a "lodestar multiplier" of 3.0x, Plaintiff ignores the Tenth Circuit rule that absent "exceptional success," a 1:1 recovery of fees is the limit for a *fully* successful case, which Plaintiff did not achieve here. *Jordan v. Heckler*, 744 F.2d 1397, 1401-02

---

[12] *See Huddleston v. Colvin*, 2014 WL 7404138, at *1-2 (E.D. Okla. Dec. 30, 2014); Pl.'s Ex. 5, Order and Final J*., In re Syntroleum Corp. S'holder Litig.*, No. CJ-2013-5807 (Tulsa Cty. Dist. Ct. Dec. 2, 2015); Ex. 7, *In re Syntroleum*, Pl.'s Fee Mot. (Sept. 12, 2016); *see also Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (describing this Circuit's preference for "percentage of the fund" fee method in common fund cases).

[13] In contrast to the rates Plaintiff seeks for her New York Counsel, she requests an hourly rate of $325 for her Tulsa-based local Counsel. *See* Copeland Decl. [Doc. 25]. These rates are unsubstantiated for the same reasons identified herein.

(10th Cir. 1984). Based on a 3.0x multiple, Plaintiff's New York Counsel's effective

hourly rates would range from $1,500 to $2,325 per hour. *See* Monteverde Decl. ¶ 3. This

is an untenable windfall:

> [E]ven though the amount of money that changed hands here is great, our
> conscience is shocked by an award of a 3.16 multiplier that results in a fee
> equal to more than $900 per hour for every[one] who worked on the case.

*Rosenbaum*, 64 F.3d at 1447-48 (explaining that a multiple is generally not warranted

absent "evidence of something extraordinary in the results"). Thus, it is unsurprising that

Plaintiff does not cite any case in which a court awarded a multiplier of 3, let alone in a

securities class action case that was voluntarily dismissed after a few weeks of inactivity.

Contrary to Plaintiff's arguments, the *Johnson* factors support a zero multiple.

### a. The amount involved and the results obtained.

The amount involved and the results obtained do not support Plaintiff's fee request.

A lodestar should be heavily adjusted downward where, as here, "the two [supplemental]

disclosures the plaintiffs claim credit for were only a minor aspect of their complaint" and

"the bulk of the claims asserted produced no compensable benefit at all." *In re BEA Sys.,*

*Inc. S'holders Litig.*, 2009 WL 1931641, at *1 (Del. Ch. June 24, 2009) (reducing a fee

request by 75%). As the Supreme Court has explained:

> [If] a plaintiff has achieved only partial or limited success, the product of
> hours reasonably expended on the litigation as a whole times a reasonable
> hourly rate may be an excessive amount. This will be true even where the
> plaintiff's claims were interrelated….

*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). There was *no success* here. A court in

this Circuit recently reduced a requested fee in a disclosure-only settlement by 75% where

the two supplemental disclosures provided "moderate at best" benefits to stockholders and

"were effectively line edits to the Proxy statements, represent[ing] a small fraction of the total disclosures made." *Finkel*, 2012 WL 171038, at *2.

Plaintiff fortuitously "obtained"—at most—two of the numerous, immaterial disclosures that she originally sought, and she abandoned most of her claims:

| Plaintiff's requested disclosure | Supplemental Disclosures |
|---|---|
| "material information concerning the Company's and Patterson-UTI's financial projections."  Compl. ¶ 35. | -- |
| "line item projections for the metrics used to calculate . . . non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measure."  *Id.* ¶ 35. | -- |
| "a reconciliation table of the non-GAAP measure (Adjusted EBITDA) to the most comparable GAAP measures…."  *Id.* ¶ 39. | -- |
| "the line item projections for the financial metrics that were used to calculated the non-GAAP measure Adjusted EBITDA . . . ."  *Id.* ¶ 40. | -- |
| "the estimated future cash flow contained in the SSE Management Cases and the estimated future cash flows contained in the Patterson-UTI management case," *Id.* ¶ 42. | X |
| "information regarding 'the pro forma impact of the merger on Patterson-UTI's cash flow,'" *Id.* ¶ 42. | -- |
| "sufficient[] quantif[ication of] the anticipated synergies expected from the Proposed Transaction." *Id.* ¶ 45. | -- |
| additional "information for shareholders to assess the valuation analyses performed by Morgan Stanley . . . and to assess a significant conflict of interest Morgan Stanley faced."  *Id.* ¶ 46. | -- |
| "the peer companies utilized" for "Morgan Stanley's Sum of the Parts Analysis,"  *Id.* ¶ 47. | X |
| "[that] Morgan Stanley currently holds 702,747 shares of Patterson-UTI common stock . . . ."  *Id.* ¶ 48. | -- |
| "that [Defendant] Douglas Wall served as Patterson-UTI's President and Chief Executive Officer from 2007 through 2012," *Id.* ¶ 49. | -- |
| "the nature of Mr. Wall's relationship with current members of Patterson-UTI's management and board."  *Id.* ¶ 49 | -- |

The two Supplemental Disclosures appear to have been afterthoughts in the Complaint. For instance, Plaintiff dedicates eight paragraphs of her Complaint to the "GAAP reconciliation" omission claims (*id.* ¶¶ 34-41) but only one paragraph concerning the "sum

of the parts" omission claim (*id.* ¶ 47).   Plaintiff also fully abandoned her non-disclosure

claims, *i.e.*, that the Merger terms were "insufficient," "undervalue[] the Company in light

of its recent financial performance and strong growth prospects," and "the result of a flawed

sales process."  *Id.* ¶¶ 3, 21-33.  Even if Plaintiff could take credit for these two disclosures,

which she cannot, the results obtained do not warrant a fee, let alone a positive multiplier.

### b.    The undesirability of the case.

The undesirability of strike suits such as this one counsels strongly against

Plaintiff's fee request.  Courts throughout the country have uniformly criticized the use of

securities class action lawsuits to extract attorneys' fees for Plaintiff's counsel, *e.g.*:

- "The type of class action illustrated by this case—the class action that yields fees for class counsel and nothing for the class—is no better than a racket. It must end." *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718, 724 (7th Cir. 2016).

- "[Fee awards for supplemental disclosures] have caused deal litigation to explode in the United States beyond the realm of reason.  In just the past decade, the percentage of transactions of $100 million or more that have triggered stockholder litigation in this country has more than doubled, from 39.3% in 2005 to a peak of 94.9% in 2014."  *In re Trulia*, 129 A.3d at 894.

Counsel should not be rewarded for filing such a lawsuit, particularly where it

regrettably appears that they abandoned this lawsuit to serve their own interests.  Plaintiff

relies exclusively on the March 3rd Letter to assert that this lawsuit caused the benefit for

which she seeks a fee—effectively conceding that her P.I. Motion had no merit and

conferred no benefit.  Op. Br. at 4-5, 13.  Counsel conceded that they decided to abandon

this lawsuit immediately after "having reviewed the SEC Letters" on April 5, 2017.  Pl.'s

Notice of Withdrawal, at 2 [Doc. 18].  The SEC letters said nothing about the substance of

Plaintiff's claims (particularly her claims that remained after the Supplemental

Disclosures).  But the SEC letters *did* (in Counsel's mind) provide an avenue for seeking fees.  Indeed, Counsel noted the connection between the SEC letters and their forthcoming fee request in the Notice of Withdrawal, arguing that the Supplemental Disclosures "confer[ ] a substantial benefit on SSE shareholders" in light of the SEC letters.  *Id.*  In other words, as soon as Counsel had something upon which to base a mootness fee request, the remainder of the lawsuit became irrelevant.[14]  This was an "undesirable" lawsuit in every sense.

### c.   Rubber-stamp litigation does not warrant a positive multiplier.

The novelty and difficulty of the question presented by the case; the skill requisite to perform the legal service properly; and the experience, reputation and ability of the attorneys do not support Plaintiff's fee request.  And, for the same reasons, Counsel were not precluded of other employment due to acceptance of the case.

Counsel are high-volume, serial filers of nearly identical lawsuits.  The filing of this cookie-cutter lawsuit did not preclude them from filing any other lawsuits or require any "skill" other than copying-and-pasting allegations from their previous complaints.[15]

---

[14] Counsel also had a self-interest in avoiding an injunction hearing concerning its "GAAP reconciliation" allegations, which they regularly, mindlessly include in their complaints.  *See, e.g.,* Exs. 8 & 9, *Phelps v. Delek US Holdings, Inc.*, No. 3:17-cv-00910 (M.D. Tenn. June 2, 2017), *voluntarily dismissed*, June 29, 2017; Exs. 10 & 11, *Klein v. Team Health Holdings, Inc.*, No. 3:16-cv-00675 (E.D. Tenn. Dec. 2, 2016), *voluntarily dismissed*, Feb. 6, 2017.  Counsel have avoided any adjudication of this claim, which would almost certainly create precedent establishing that such a claim fails under the plain language of the applicable regulation.  *See* 17 C.F.R. § 244.100(d) (explaining that the GAAP reconciliation rules do not apply to proxy statements that, like the Proxy, "relat[e] to a proposed business combination" and are subject to 17 C.F.R. § 229.1015).

[15] *See* Ex. 12, *Epstein v. Energy Transfer Partners, L.P.*, No. 1:17-cv-00069 (D. Del. Jan. 25, 2017) ¶¶ 81-88 (containing nearly identical GAAP reconciliation allegations);

Indeed, during the short time that this lawsuit has been pending, Counsel have launched numerous "investigations" and filed at least five similar lawsuits.[16] Further, nearly all of Counsel's highly analogous matters were voluntarily dismissed, as here, without significant litigation activity other than (in many cases) an attempt to coerce a fee in exchange for withdrawing the threat to enjoin the transaction.[17] Thus, Counsel have not demonstrated any skill or expertise that warrants any fee in this matter.

### d. The contingent nature of the engagement does not aid Plaintiff.

Where only a "modest result" is achieved, "the fact that the case was undertaken on a contingent fee basis militates in favor of awarding only a modest fee that reflects the value of the benefits achieved." *In re Instinet Grp. S'holders Litig.*, 2005 WL 3501708, at *3 (Del. Ch. Dec. 14, 2005) (awarding an effective hourly rate of $173/hour).

---

Ex. 13, *Hawkins v. Memorial Res. Dev. Corp.*, No. 4:16-cv-02201 (S.D. Tex. July 22, 2016) ¶¶ 70-80 (demanding additional line-items in the projections and details concerning the financial advisor's analyses).

[16] *See, e.g.,* Ex. 8, *Phelps*, No. 3:17-cv-00910 (M.D. Tenn. June 2, 2017) ¶¶ 25-30 (containing verbatim allegations concerning "line item projections" and GAAP reconciliations); Ex. 14, *Garcia v. Kate Spade & Co.*, No. 1:17-cv-04177-RMB (S.D.N.Y. June 5, 2017) (same).

[17] *See, e.g.,* Exs. 15 & 16, *Paprakis v. Skullcandy*, No. 2:16-cv-00810-DB (D. Utah July 19, 2016) (proxy allegedly omitted "estimates of fresh [sic] cash flow" and conflict of interest by company's financial advisor), *voluntarily dismissed*, Nov. 9, 2016; Exs. 10 & 11, *Klein v. Team Health Holdings, Inc.*, No. 3:16-cv-00675 (E.D. Tenn. Dec. 2, 2016) ("the Proxy fails to disclose . . . projections for the metrics used to calculate 'Adjusted EBITDA' and 'Unlevered Free Cash Flow.'"), *voluntarily dismissed*, Feb. 6, 2017; Exs. 17 & 18, *Krieger v. LRR Energy, L.P.*, No. 4:15-cv-02017 (S.D. Tex. July 14, 2015) ¶¶ 79-81 (proxy allegedly omitted "projected free cash flows"), *voluntarily dismissed,* July 17, 2015.

### e. Time limitations do not support Plaintiff's fee request.

There were no time limitations imposed by the client or the circumstances that support Plaintiff's fee request. More than ample time was available between the filing of the Complaint (Feb. 22, 2017) and the closing of the Merger (Apr. 20, 2017) to litigate a request for injunctive relief, particularly given that Plaintiff never sought discovery. But Plaintiff sat idly for over *one month* before filing her P.I. Motion on March 28, 2017, the first activity on the docket since the day the Complaint was filed. Plaintiff created any exigency by waiting until an injunction would disrupt the closing of the Merger, a delay that served no purpose other than to increase the *in terrorem* value of the lawsuit. *See City Trading Fund v. Nye*, 2015 WL 93894, at *15, *20 (N.Y. Sup. Ct. Jan. 7, 2015) (discussing the tactic of waiting until a merger is about to close before seeking injunctive relief to maximize the lawsuit's nuisance value), *rev'd as premature*, 144 A.D.3d 595 (N.Y. 2016).

### f. Similar cases have awarded no fee.

The customary fee and awards in similar cases are far lower than Plaintiff has requested. Plaintiff focuses on the bottom-line dollar amount in the cases she cites as precedent, but these cases involved (1) agreed fees, (2) far higher numbers of hours, and (3) far lower lodestar multipliers.[18] Similar matters within the Tenth Circuit—also

---

[18] *See, e.g.*, Ex. 19, *Douglas v. Witney*, No. 3:16-cv-00921-WHO, Decl. of Barbara A. Rohr ¶ 73 (N.D. Cal. Nov. 7, 2016) (seeking agreed $1 million in fees for 1,088.2 hours based on multiplier of 1.32); Ex. 20, *Lambert v. Tellabs, Inc.*, No. 1:13-cv-07945, Decl. of Juan E. Monteverde ¶¶ 54-55 (N.D. Ill. July 23, 2015) (seeking agreed $700,000 fee for 1,763.05 hours with *negative* multiplier of 0.68); Ex. 21, *Nichting v. DPL Inc.*, No. 3:11-cv-141, Mem. of Law in Support of Pls.' Mot. for Fees, at 38 (S.D. Ohio Jan. 18, 2012) (seeking agreed $700,000 fee for 850 hours, based on 1.56 multiplier); Ex. 22, *In re Crestwood Midstream Partners Unitholder Litig.*, No. 4:13-cv-01528, Unopposed Mot. and Memo. for Final Approval of Class Action Settlement, at 40 (S.D. Tex. May 5, 2014)

involving Counsel—resulted in *no fee*. *See, e.g., Paprakis*, 2017 WL 2579027, at \*4-5;

*see also Case by Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1254 (10th Cir. 1998)

(noting that "a court may respond by awarding no fees at all" when a party submits an

"attorney's fee request that is outrageously excessive").

## IV.   CONCLUSION

For these reasons, Defendants respectfully request that the Court deny Plaintiff's

motion, order that Plaintiff take nothing, and grant such other and further relief to which

Defendants may be entitled.

---

(seeking agreed $595,000 fee for 1,040 hours with *negative* multiplier, after litigating for more than a year); Ex. 23, *In re Covidien PLC Sec. Litig.*, No. 1:14-cv-12949-LTS, Memo. of Law in Support of Lead Pl.'s Unopposed Mot. for Final Approval of Settlement, at 23 (D. Mass. Aug. 31, 2015) (seeking agreed $540,000 fee for 900 hours of work based on 1.07 multiplier when litigation lasted more than a year).

Respectfully submitted,


*/s/ Timothy J. Bomhoff*
Timothy J. Bomhoff, OBA # 13172
Patrick L. Stein, OBA #30737
MCAFEE & TAFT
Tenth Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102
Telephone: (405) 552-2339
Facsimile: (405) 228-7339
tim.bomhoff@mcafeetaft.com
patrick.stein@mcafeetaft.com


Of Counsel:
Michael C. Holmes
Craig E. Zieminski
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Telephone: (214) 220-7700
Facsimile: (214) 220-7716
mholmes@velaw.com
czieminski@velaw.com

*Attorneys for Defendants*

*Seventy Seven Energy, Inc., Jerry L.
Winchester, Victor Danh, Andrew Axelrod,
Douglas J. Wall, David King, Edward J.
Dipaolo, and Steven Hinchman*

DATED:  August 2, 2017

## CERTIFICATE OF SERVICE

I hereby certify that I authorize the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send email notification of such filing to all registered parties on August 2, 2017.


*/s/ Timothy J. Bomhoff*
Timothy J. Bomhoff