## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARIA COMEAUX, Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff, | § § § | |
| v. | § § | |
| SEVENTY SEVEN ENERGY INC., JERRY L. WINCHESTER, VICTOR DANH, ANDREW AXELROD, DOUGLAS J. WALL, DAVID KING, EDWARD J. DIPAOLO, and STEVEN HINCHMAN, | § § § § § § § § § | Case No. 5:17-cv-00191-M |
| Defendants. | § | |

## DEFENDANTS' MOTION FOR SANCTIONS
## AND OPENING BRIEF IN SUPPORT OF SAME

Timothy J. Bomhoff, OBA # 13172
Patrick L. Stein, OBA #30737
MCAFEE & TAFT
Tenth Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102
Telephone: (405) 552-2339
Facsimile: (405) 228-7339
tim.bomhoff@mcafeetaft.com
patrick.stein@mcafeetaft.com

*Attorneys for Defendants Seventy Seven Energy, Inc., Jerry L. Winchester, Victor Danh, Andrew Axelrod, Douglas J. Wall, David King, Edward J. Dipaolo, and Steven Hinchman*

Of Counsel:

Michael C. Holmes
Craig E. Zieminski
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Telephone: (214) 220-7700
Facsimile: (214) 220-7716
mholmes@velaw.com
czieminski@velaw.com

## <u>DEFENDANTS' MOTION FOR SANCTIONS</u>

Pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the inherent authority of the Court, Seventy-Seven Energy, Inc. ("SSE") and the individual defendants (collectively, "Defendants"), by and through their attorneys, move this Court for an Order sanctioning counsel for Plaintiff Maria Comeaux, Monteverde & Associates PC ("Counsel").  In support of this Motion, Defendants submit the following brief.

# TABLE OF CONTENTS

I.      SUMMARY OF THE ARGUMENT ................................................................................1

II.     FACTS ........................................................................................................................3

        A.      Counsel filed the Complaint. ................................................................................3

        B.      Defendants addressed the SEC's comment letters regarding the Proxy. ................4

        C.      Counsel filed and withdrew the P.I. Motion. .........................................................5

III.    ARGUMENT AND AUTHORITIES ............................................................................7

        A.      Counsel are subject to sanctions for their conduct in connection with the
                filing and withdrawal of the P.I. Motion. ...........................................................10

        B.      The P.I. Motion pursued facially meritless claims. ..............................................15

        C.      Sanctions in the amount of attorneys' fees that Counsel have improperly
                caused Defendants to incur would be reasonable and proportionate. ....................18

        D.      Requested findings and conclusions. ...................................................................21

IV.     CONCLUSION ..........................................................................................................23

# TABLE OF AUTHORITIES

**Cases**

*Adamson v. Bowen*,
    855 F.2d 668 (10th Cir. 1988) .................................................................. 9

*Ash v. Brunswick Corp.*,
    405 F. Supp. 234 (D. Del. 1975)............................................................... 13

*Baca v. Berry*,
    806 F.3d 1262 (10th Cir. 2015) ................................................................. 8

*Braley v. Campbell*,
    832 F.2d 1504 (10th Cir. 1987) (en banc) ............................................... 21

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991).................................................................................... 8

*Chavez v. Bennett Propp*,
    216 F.3d 1086, 2000 WL 702309 (10th Cir. May 26, 2000)............... 9, 15

*City Trading Fund v. Nye*,
    2015 WL 93894 (N.Y. Sup. Ct. Jan. 7, 2015), *rev'd as premature*, 144 A.D.3d
    595 (N.Y. App. Div. 2016) ...................................................................... 11

*Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*,
    430 F.3d 1269 (10th Cir. 2005) ........................................................ 15, 21

*Epstein v. Energy Transfer Partners, L.P.*,
    No. 1:17-cv-00069-RGA (D. Del. Jan. 25, 2017)...................................... 3

*Farmer v. Banco Popular of N. Am.*,
    791 F.3d 1246 (10th Cir. 2015) ............................................................... 20

*Garcia v. Kate Spade & Co.*,
    No. 1:17-cv-04177-RMB (S.D.N.Y. June 5, 2017)........................ 3, 16, 19

*Hamilton v. Boise Cascade Exp.*,
    519 F.3d 1197 (10th Cir. 2008) ..................................................... 8, 18, 21

*Hawkins v. Memorial Res. Dev. Corp.*,
    No. 4:16-cv-02201 (S.D. Tex. July 22, 2016) .......................................... 3

*In re Micromet, Inc. S'holders Litig.*,
    2012 WL 681785 (Del. Ch. Feb. 29, 2012) ............................................. 17

*In re Safeco Ins. Policy ex rel. Skinner*,
    96 F. App'x 654 (10th Cir. 2004) ............................................................ 22

*In re Trulia, Inc. Stockholder Litig.*,
    129 A.3d 884 (Del. Ch. 2016) ...................................................... 10, 14, 20

*In re Walgreen Co. Stockholder Litig.*,
    832 F.3d 718 (7th Cir. 2016) ............................................................... 2, 20

*Kin-Ark Corp. v. Boyles*,
　　593 F.2d 361 (10th Cir. 1979) ........................................................................ 17

*Klein v. Harper*,
　　777 F.3d 1144 (10th Cir. 2015) ...................................................................... 18

*Klein v. Team Health Holdings, Inc.*,
　　No. 3:16-cv-00675 (E.D. Tenn. Dec. 2, 2016), *voluntarily dismissed*, Feb. 6,
　　2017 ........................................................................................................ 3, 16, 19

*Kornfeld v. Kornfeld*,
　　393 F. App'x 575 (10th Cir. 2010) .................................................................. 22

*Krieger v. LRR Energy, L.P.*,
　　No. 4:15-cv-02017 (S.D. Tex. July 14, 2015) ................................................ 19

*Lundahl v. Halabi*,
　　600 F. App'x 596 (10th Cir. 2014), *cert. denied*, 137 S. Ct. 46 (2016)................... 15

*Mann v. Boatright*,
　　477 F.3d 1140 (10th Cir. 2007) ........................................................................ 8

*Masters v. Wilhelmina Model Agency, Inc.*,
　　473 F.3d 423 (2d Cir. 2007) ............................................................................ 17

*Mellott v. MSN Comm'cns, Inc.*,
　　492 F. App'x 887 (10th Cir. 2012) .................................................................. 18

*Paprakis v. Skullcandy*,
　　No. 2:16-cv-00810-DB (D. Utah July 19, 2016) ............................................ 19

*Paycom Payroll, LLC v. Richison*,
　　No. CIV-09-488-W, 2011 WL 13112251 (W.D. Okla. June 8, 2011) ......... 15, 20, 22

*Phelps v. Delek US Holdings, Inc.*,
　　No. 3:17-cv-00910 (M.D. Tenn. June 2, 2017) ............................................ 3, 16, 19

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*,
　　793 F.3d 1177 (10th Cir. 2015) ...................................................................... 21

*Roth v. Green*,
　　466 F.3d 1179 (10th Cir. 2006) ...................................................................... 8, 9

*Sieverding v. Colo. Bar Ass'n*,
　　237 F. App'x 355 (10th Cir. 2007) .................................................................. 21

*Skeen v. Jo-Ann Stores, Inc.*,
　　750 A.2d 1170 (Del. 2000) .............................................................................. 13

*Sky Harbor Air Serv., Inc. v. Reams*,
　　491 F. App'x 875 (10th Cir. 2012) ................................................................ 8, 20

*Steinert v. Winn Grp., Inc.*,
　　440 F.3d 1214 (10th Cir. 2006) .................................................................. 7, 16, 19

**Statutes**

15 U.S.C. § 78u-4(a)(6) ................................................................................. 14, 17

28 U.S.C. § 1927.............................................................................................. passim

**Rules**

Fed. R. Civ. P. 11 ............................................................................................ passim

Fed. R. Civ. P. 11(b) ...................................................................................... passim

Fed. R. Civ. P. 11(b)(1)................................................................................. 7, 21

Fed. R. Civ. P. 11(b)(2)................................................................................. 7, 17, 22

Fed. R. Civ. P. 11(b)(3)................................................................................. 17

Fed. R. Civ. P. 11(c) ...................................................................................... 9

Fed. R. Civ. P. 11(c)(4)................................................................................. 18

Oklahoma Rules of Professional Conduct Rule 3.1...................................... 15, 16

LCvR83.6(b) .................................................................................................. 15

**Regulations**

17 C.F.R. § 229.1015 ..................................................................................... 16

17 C.F.R. § 244.100 ....................................................................................... 16

**Other Authorities**

Ravi Sinha, *Shareholder Litigation Involving Acquisitions of Public Companies:*
    *Review of 2015 and 1H 2016 M&A Litigation*,
    CORNERSTONE RESEARCH, *available at*
    https://www.cornerstone.com/Publications/Reports/Shareholder-Litigation-
    Involving-Acquisitions-2016 ...................................................................... 14

Steven Davidoff Solomon, *The Shifting Tides of Merger Litigation*,
    HARVARD LAW SCHOOL FORUM ON CORPORATE GOVERNANCE AND FINANCIAL
    REGULATION (Mar. 1, 2017)  (emphasis added),
    https://corpgov.law.harvard.edu/2017/03/01/the-shifting-tides-of-merger-
    litigation/.................................................................................................... 14

Matthew D. Cain et al., *The Shifting Tides of Merger Litigation,* VANDERBILT
    UNIVERSITY LAW SCHOOL: LEGAL STUDIES RESEARCH PAPER SERIES, and
    UNIVERSITY OF PENNSYLVANIA LAW SCHOOL INSTITUTE FOR LAW AND
    ECONOMICS, *available at* http://ssrn.com/abstract=2922121................... 14

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

Pursuant to Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority, Seventy-Seven Energy, Inc. ("SSE") and the individual defendants (collectively, "Defendants") respectfully submit this brief in support of their Motion for Sanctions against counsel for Plaintiff Maria Comeaux, Monteverde & Associates PC ("Counsel").

## I.    SUMMARY OF THE ARGUMENT

Sanctions are appropriate against Plaintiff's Counsel because they have pursued a course of conduct in this case designed to use the judicial system solely to generate attorneys' fees—to the detriment of the Court, Plaintiff, and Defendants.  This lawsuit raised meritless challenges to the now-completed merger between Patterson-UTI Energy, Inc. ("Patterson") and SSE (the "Merger").  Counsel filed a Complaint that simply cobbled together and copy-pasted boilerplate allegations from Counsel's past merger strike suits. Then, to maximize the nuisance value of the lawsuit, Counsel delayed seeking injunctive relief (additional disclosures concerning the Merger) until the "sweet spot" for a settlement: *i.e.*, when Defendants could *settle* in time to publish additional disclosures but could not *oppose* the requested injunctive relief without risking a delay to the closing of the Merger (because the injunction hearing was set for less than a week before the Merger's anticipated closing date).  When Defendants refused to pursue a disclosure-only settlement, Counsel withdrew the expedited injunction motion, abandoned the lawsuit, and instead sought a "mootness fee" by taking credit for supplemental disclosures that Defendants had made in response to SEC comment letters (the "Supplemental Disclosures").

1

While merger strike suits are (unfortunately) all too common, this lawsuit is particularly odious because Counsel have candidly admitted that they abandoned the lawsuit in pursuit of their self-interests.  Counsel unequivocally argued that the Supplemental Disclosures were inadequate and that the Merger should be enjoined until Defendants disclosed additional information.  However, as soon as Counsel obtained purported grounds to take credit for the Supplemental Disclosures, Counsel reversed course and proclaimed that the Supplemental Disclosures provided all the information SSE's stockholders needed to vote on the Merger.  Counsel explained that they withdrew their injunction motion after "review[ing] the SEC Letters."  Ex. 1, Pl.'s Notice of Withdrawal [Doc. 18].  But the only purported relevance of these SEC letters is that they form the basis for Counsel's fee request—these letters said nothing about the issues in the injunction motion or the other non-mooted issues in the lawsuit.  In other words, as soon as Counsel had a shred of paper to hold up in support of a fee request, the remainder of the lawsuit was quickly abandoned.

"The type of class action illustrated by this case—the class action that yields fees for class counsel and nothing for the class—is no better than a racket. It must end."  *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718, 724 (7th Cir. 2016).  Because this meritless lawsuit and related motions have been driven solely by Counsel's improper motive to generate fees, this Court should impose sanctions against Counsel.

## II.     FACTS

### A.     Counsel filed the Complaint.

Counsel filed the Original Complaint on February 22, 2017, raising a number of challenges to the now-completed Merger.  Although the Merger provided a 103% premium to SSE stockholders like Plaintiff—meaning that Patterson agreed to pay Plaintiff more than *twice* the market value of her SSE stock—the Complaint alleged that the Merger provided inadequate consideration to SSE stockholders.  Compl. [Doc. 1] ¶ 3; Proxy [Doc. 30-4] at 95.  And although Defendants published a 400-page proxy statement (the "Proxy") and various other sources of information concerning the Merger, the Complaint also alleged that the Merger should be enjoined until the Proxy disclosed twelve additional tidbits of information.  Compl. [Doc. 1] ¶¶ 34-50.  According to Plaintiff, the total mix of information made available about the Merger would be substantially altered by these twelve pieces of information.  Compl. [Doc. 1] ¶¶ 34-50.  The allegations in the Complaint are copy-pasted from other complaints that Counsel regularly file across the country in connection with other mergers.[1]

---

[1] *See, e.g.*, Exs. 6 & 7, *Phelps v. Delek US Holdings, Inc.*, No. 3:17-cv-00910 (M.D. Tenn. June 2, 2017) ¶¶ 25-30 (containing verbatim allegations concerning "line item projections" and GAAP reconciliations), *voluntarily dismissed*, June 29, 2017; Exs. 8 & 9, *Garcia v. Kate Spade & Co.*, No. 1:17-cv-04177-RMB (S.D.N.Y. June 5, 2017) ¶¶ 65-70 (same), *voluntarily dismissed*, June 29, 2017; Ex. 10, *Epstein v. Energy Transfer Partners, L.P.*, No. 1:17-cv-00069-RGA (D. Del. Jan. 25, 2017) ¶¶ 81-88 (containing nearly identical GAAP reconciliation allegations); Exs. 11 & 12, *Klein v. Team Health Holdings, Inc.*, No. 3:16-cv-00675 (E.D. Tenn. Dec. 2, 2016) ¶¶ 65-72 (same, and objecting that "the Proxy fails to disclose . . . projections for the metrics used to calculate 'Adjusted EBITDA' and 'Unlevered Free Cash Flow.'"), *voluntarily dismissed*, Feb. 6, 2017; Exs. 13 & 14, *Hawkins v. Memorial Res. Dev. Corp.*, No. 4:16-cv-02201 (S.D. Tex. July 22, 2016) ¶¶ 70-80

**B.      Defendants addressed the SEC's comment letters regarding the Proxy.**

As is typical when public companies file preliminary proxy statements concerning mergers, the SEC sent Defendants two letters with comments to the Proxy: the first on February 17, 2017 (the "February 17 Letter," attached as Exhibit 2), and the second on March 3, 2017 (the "March 3 Letter," attached as Exhibit 3 and together, the "SEC Letters"). In response to the February 17 Letter, Defendants provided board presentations to the SEC. In the March 3 Letter, the SEC sought information regarding SSE's and Patterson's free cash flow projections in response to the board presentations Defendants provided at the SEC's earlier request. Ex. 3, March 3 Letter at cmt. 4.

On March 13, 2017, before any activity occurred in the lawsuit, SSE filed an amended Proxy addressing the SEC's comments in the March 3 Letter. The amended Proxy disclosed two of the twelve items that Plaintiff alleged the Proxy omitted (the "Supplemental Disclosures").[2] The SEC declared the second amended proxy effective on March 22, 2017, and it became the definitive Proxy that was mailed to SSE stockholders. For an additional two weeks after SSE filed the Supplemental Disclosures, there was no activity in the lawsuit.

_____

(demanding additional line-items in the projections and details concerning the financial advisor's analyses), *voluntarily dismissed*, Nov. 1, 2016.

[2] Specifically, the Proxy amendment added (1) "free cash flow" line-items to two of its charts of financial projections and (2) a sentence to clarify that the disclosed list of "comparable companies" that Morgan Stanley (SSE's financial advisor) used for one of its analyses was also used for its "sum of the parts" analysis. SSE made the Supplemental Disclosures in response to comments that it received from the SEC, not due to Plaintiff's allegations. *See* Opp. to Mot. for Fees [Doc. 30] at 2-3, 14-15.

**C.      Counsel filed and withdrew the P.I. Motion.**

When Counsel filed the Complaint on February 22, 2017, they had ample time to seek injunctive relief (*i.e.*, additional disclosures) before the Merger closed.  The general practice is to publish supplemental disclosures at least ten days before a merger vote so that stockholders have adequate time to consider the additional information, and the Merger vote did not occur until April 20, 2017.  Thus, had the Court ordered Defendants to disclose additional information at any time in March, Defendants could have published the information without jeopardizing the April 20, 2017 stockholder vote.

Instead, Counsel sat idly for over *one month* before filing their Motion for a Temporary Restraining Order and Preliminary Injunction (the "P.I. Motion") and Brief in Support (the "P.I. Brief") on March 28, 2017—the first substantive activity on the docket since the day the Complaint was filed.  Plaintiff sought no discovery during the delay, yet asked the Court to expedite the hearing and briefing schedule on the P.I. Motion [Doc. 6].  The Court granted an expedited hearing on April 14, 2017, a mere six days before the stockholder vote on the Merger.  *See* Opp. to Mot. for Fees [Doc. 30] at 24.  Counsel offered no explanation for their delay in waiting to file the P.I. Motion.

In the P.I. Motion, Plaintiff alleged that the Supplemental Disclosures were insufficient and that the Merger should be enjoined until Defendants made further disclosures.  *See*. P.I. Brief [Doc. 4] at 3.  The P.I. Motion contended that the Proxy omitted (1) a reconciliation of non-GAAP (generally accepted accounting principles) financial projections to their nearest GAAP-based counterpart, and (2) the fact that Morgan Stanley, SSE's financial advisor, owned a small amount of Patterson-UTI common stock (the "P.I.

Disclosure Claims"). *Id.* According to the P.I. Brief, "[i]t is imperative that this information is disclosed to SSE's shareholders prior to the April 20th Shareholder Vote, so that they can properly exercise their corporate suffrage rights." *Id.*

Because the P.I. Disclosure Claims—like the rest of this lawsuit—were wholly meritless (*see infra* Part III.B), Defendants opposed the P.I. Motion rather than negotiating a nuisance-value settlement or filing a supplemental 8-K that mooted these claims. After Defendants drafted and filed an expedited Opposition to the P.I. Motion, Counsel withdrew the P.I. Motion, dismissed the lawsuit, and announced that the Supplemental Disclosures—published before Counsel *began drafting* the P.I. Motion—"enabled [SSE's stockholders] to meaningfully assess the fairness of the Merger and exercise their corporate suffrage rights on an informed basis." Br. Supporting Mot. for Fees [Doc. 23] ("Pl.'s Br. for Fees") at 5; Ex. 19, Monteverde Decl. at Ex. A [Doc. 24-1]. Counsel declined to pursue the Complaint's "inadequate consideration" claims and the disclosure claims that had not been mooted, including the P.I. Disclosure Claims. The Notice of Withdrawal of the P.I. Motion states:

> Having reviewed the SEC Letters, Plaintiff believes that the additional information Defendants added to the final version of the joint proxy statement/prospectus filed with the SEC on March 23, 2017[3] *confers a substantial benefit on SSE shareholders* and sufficiently addresses the disclosure issues identified in Plaintiff's complaint and the Injunction Motion.

---

[3] On March 22, 2017, the SEC declared the amended proxy that SSE filed on March 13, 2017 to be effective.

Ex. 1, Pl.'s Notice of Withdrawal at 2-3 (emphasis added).  The SEC Letters do not address the disclosures at issue in the "Injunction Motion," the other non-mooted disclosure claims in the Complaint, or Plaintiff's allegations concerning the terms of the Merger.

At the SSE stockholder meeting on April 20, 2017, 99.6% of the votes cast approved the Merger.  *See* Ex. 4, SSE 8-K, Apr. 20, 2017.

The lawsuit was voluntarily dismissed on May 25, 2017 ("Dismissal"), though the Dismissal asked the Court to retain jurisdiction "for purposes of further proceedings related to the adjudication of Plaintiff's anticipated application for an award of attorneys' fees and expenses."  Ex. 5, Dismissal [Doc. 20] at 2.  One month later, the Motion for Fees was filed, requesting an award of $380,000.  Pl.'s Br. for Fees at 2.

### III.    ARGUMENT AND AUTHORITIES

Defendants respectfully request that the Court impose sanctions against Counsel for their self-serving conduct and meritless filings, which have served no purpose other than to seek attorneys' fees.  Sanctions are warranted under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent authority.

Under Section 1927 of Title 28, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Section 1927 provides an "incentive for attorneys to regularly re-evaluate the merits of their claims and to avoid prolonging meritless claims."  *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1224 (10th Cir. 2006).

Forcing an opposing party to defend against meritless claims "multiplies the proceedings" and justifies an award of sanctions. *Id.* at 1221.

As the Tenth Circuit has recognized, sanctions may be imposed under Section 1927 "when an attorney acts recklessly or with indifference to the law[;] . . . intentionally acts without a plausible basis; [or] when the entire course of the proceedings was unwarranted." *Id.* at 1221 (citation omitted); *Baca v. Berry*, 806 F.3d 1262, 1273 (10th Cir. 2015) (explaining that sanctions may be imposed under 28 U.S.C. § 1927 for "reckless indifference to the merits of a claim").[4]

This Court also has "inherent power to impose sanctions that are necessary to regulate its docket, promote judicial efficiency, and deter frivolous filings." *Mann v. Boatright*, 477 F.3d 1140, 1150 (10th Cir. 2007) (imposing sanctions on pro se litigant for filing repeated, frivolous motions seeking unwarranted relief). A court may assess attorney's fees under its inherent power "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (citation omitted).

Rule 11 also provides this Court with broad discretion to impose sanctions. *See Roth v. Green*, 466 F.3d 1179, 1190 (10th Cir. 2006); *Sky Harbor Air Serv., Inc. v. Reams*, 491 F. App'x 875, 894 (10th Cir. 2012). "Rule 11 provides that, by signing a [pleading],

---

[4] Imposing sanctions under Section 1927 does not require a finding of bad faith. *See, e.g.*, *Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1203 (10th Cir. 2008) ("Where, 'pure heart' notwithstanding, an attorney's momentarily 'empty head' results in an objectively vexatious and unreasonable multiplication of proceedings at expense to his opponent, the court may hold the attorney personally responsible." (citation omitted)).

an attorney certifies that 'it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation'. . . . ." *Chavez v. Bennett Propp*, 216 F.3d 1086, 2000 WL 702309, at *2 (10th Cir. May 26, 2000) (unpublished) (quoting Fed. R. Civ. P. 11(b)).   Under Tenth Circuit law, courts evaluate litigation conduct under an "objective reasonableness" standard: *i.e.*, "whether a reasonable attorney admitted to practice before the district court would file such a document." *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988).   When an attorney violates this Rule, as Counsel have, the Court may impose an appropriate sanction under Rule 11(c).[5]

---

[5] Because sanctions are available and appropriate under Section 1927, the Local Rules, and the Court's inherent authority, it is unnecessary to determine whether sanctions are also available under Rule 11 where, as here, the underlying complaint has been dismissed but a post-dismissal motion for fees remains pending.  *See Roth*, 466 F.3d at 1193 (explaining that sanctions were available under Section 1927 but not Rule 11 because the complaint had been dismissed).  To the extent the Court reaches this issue, it should hold that Rule 11 sanctions remain available, at the very least, in connection with the still-pending Motion for Fees.  The Advisory Committee's notes on Rule 11 explain that a Rule 11 motion should not be served after "conclusion of the case:"

> Ordinarily the motion should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely. . . Given the "safe harbor" provisions . . . a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention).

Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.  This case, however, has not yet concluded.  Counsel voluntary dismissed the Complaint, yet continue to actively seek an award of their fees, including the fees incurred in drafting the Complaint.  Rule 11 sanctions are thus appropriate here.  A contrary holding would allow Counsel to evade Rule 11 by dismissing the Complaint (and withdrawing the P.I. Motion) while continuing to pursue the Motion for Fees, which is the culmination of Counsel's improper conduct throughout the course of this litigation.  Counsel still has the opportunity to take advantage of the Rule 11 safe harbor by withdrawing the Motion for Fees, and Defendants have followed the safe harbor procedure set forth in Rule 11.

Counsel engaged in sanctionable conduct in this case on each of these grounds.

**A.    Counsel are subject to sanctions for their conduct in connection with the filing and withdrawal of the P.I. Motion.**

Counsel are subject to sanctions for filing and withdrawing the P.I. Motion for an improper purpose, to harass Defendants, and to needlessly increase the cost of litigation.

First, Counsel's month-long delay between filing the Complaint and filing the P.I. Motion appears to have been an effort to maximize the nuisance value of the lawsuit—a tactic that served Counsel's self-interests but not Plaintiff's interests.  As numerous courts have recognized, there is no legitimate purpose to delaying a motion seeking to enjoin a merger until supplemental disclosures are published; to the contrary, this delay serves counsel's self-interest in maximizing the nuisance value of a lawsuit—to the detriment of stockholders, defendants, and the courts:

> In [strike] lawsuits, plaintiffs' leverage is the threat of an injunction to prevent a transaction from closing.  Faced with that threat, defendants are incentivized to settle quickly in order to mitigate the considerable expense of litigation and the distraction it entails, to achieve closing certainty, and to obtain broad releases as a form of 'deal insurance.'

*In re Trulia, Inc. Stockholder Litig.*, 129 A.3d 884, 892 (Del. Ch. 2016).

> Plaintiffs could have commenced their lawsuit after the preliminary proxy was filed, which would have given shareholders and the court an extra two months to consider the disclosures.  Doing so would have drastically reduced the risk that the lawsuit would impact the Merger.  This also would have drastically reduced the Company's incentive to settle if, as it firmly believes (for good reason), the lawsuit should be dismissed because it is frivolous. Perhaps, then, it should come as no surprise that plaintiffs waited until . . ., one month before the shareholder vote, to file a motion to enjoin the Merger. . . .
>
> [Plaintiffs] file frivolous disclosure lawsuits shortly before a merger, knowing they will always procure a settlement and attorneys' fees under

conditions of duress – that is, where it is rational to settle obviously frivolous claims.

*City Trading Fund v. Nye*, 2015 WL 93894, at *15, *20 (N.Y. Sup. Ct. Jan. 7, 2015), *rev'd as premature*, 144 A.D.3d 595 (N.Y. App. Div. 2016). Counsel's timing of the P.I. Motion was a textbook execution of this strategy, as it provided ample time for Defendants to offer to settle in exchange for additional disclosures (and an attendant attorneys' fee) but insufficient time for the Court to order supplemental disclosures without delaying the Merger:

- <u>March 28</u>: P.I. Motion filed

- <u>April 10</u>: Per general rule, the last day to file supplemental disclosures

- <u>April 14</u>: Hearing on P.I. Motion

- <u>April 20</u>: Stockholder vote

Thus, Counsel's one-month delay served no purpose other than to increase the *in terrorem* value of the lawsuit to the detriment of Plaintiff, SSE's stockholders, the Court, and Defendants.

Second, Counsel withdrew the P.I. Motion (and abandoned the entire lawsuit other than their fee request) due to their self-interest in seeking attorneys' fees. As Counsel have effectively conceded, they dropped this lawsuit as soon as they found a purported avenue to *take credit* for the Supplemental Disclosures, not because the Supplemental Disclosures resolved Plaintiff's claims or the P.I. Motion. According to Counsel's time records, Counsel reviewed the Supplemental Disclosures *before they began drafting* the P.I. Motion, which contends that the Supplemental Disclosures *were insufficient* and that the

Merger should be enjoined until Defendants made *further* disclosures.   *See* Ex. 19, Monteverde Decl. at Ex. A [Doc. 24-1]; P.I. Br. [Doc. 4] at 6-14.   Nevertheless, after Defendants were required to draft and file an expedited Opposition to the P.I. Motion, Counsel withdrew the P.I. Motion, dismissed the lawsuit, and announced that the Supplemental Disclosures "enabled [SSE's stockholders] to meaningfully assess the fairness of the Merger and exercise their corporate suffrage rights on an informed basis." Pl.'s Br. for Fees at 5.   Counsel reversed their position on the Supplemental Disclosures and abandoned the lawsuit only after they received exhibits—*i.e.*, the SEC Letters—that now form the basis of their request for fees.   *See* Opp. to Mot. for Fees [Doc. 30] at 1-2, 14-15.   In other words, as soon as Counsel had purported support for a fee request, they immediately declined to further pursue Plaintiff's "inadequate consideration" claims and ten of her twelve disclosure claims.   The Notice of Withdrawal of the P.I. Motion confirms as much:

> Having reviewed the SEC Letters, Plaintiff believes that the additional information Defendants added to the final version of the joint proxy statement/prospectus filed with the SEC on March 23, 2017 *confers a substantial benefit on SSE shareholders* and sufficiently addresses the disclosure issues identified in Plaintiff's complaint and the Injunction Motion.

Ex. 1, Pl.'s Notice of Withdrawal at 2-3 (emphasis added).   "Substantial benefit" is, of course, a reference to the substantial benefit doctrine, under which Counsel are seeking fees in the Motion for Fees.   *See* Pl.'s Br. for Fees at [Doc. 30] 1-2, 5-6.   And the SEC Letters are Counsel's only purported evidence that the lawsuit supposedly caused Defendants to disclose the Supplemental Disclosures, which is another element of a motion

for fees. *Id.* at 4, 11.  However, the SEC Letters say nothing about the disclosures at issue in the "Injunction Motion," the other non-mooted disclosure claims in the Complaint, or Plaintiff's allegations concerning the terms of the Merger.  Thus, other than the SEC Letters' connection to the Motion for Fees, they cannot explain why Counsel abandoned Plaintiff's remaining claims.

Counsel's conduct in connection with the P.I. Motion is not the only instance in which their desire for fees has trumped Plaintiff's best interests.  For instance, highlighting the fee-driven purpose of the lawsuit, Counsel filed the lawsuit under the federal securities laws, even though Delaware common law has a more plaintiff-friendly standard of liability for disclosure claims and provides additional causes of action for inadequate merger terms.[6] Commentators have noted that such decisions are not based on stockholder-plaintiffs' best interests, but on the Delaware Court of Chancery's recent authority making it more difficult to obtain attorneys' fees for disclosure-only settlements:

- "[P]laintiffs appear . . . to be trying to avoid the effects of the changes in Delaware law by filing their cases elsewhere. Litigation brought in the Delaware Chancery Court has declined substantially. Of the deals completed in 2016, only 32% were challenged in Delaware, while 65% were challenged in other states and 37% in federal court. The latter number, which represents a significant increase in federal

---

[6] Under Delaware law, a stockholder must only prove that an omission was material. Delaware does not require the additional element, found in Section 14(a), that the omission render another statement in the proxy misleading.  *Compare Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1172 (Del. 2000) (explaining that the common law "duty of disclosure . . . requires that directors 'disclose fully and fairly all material information within the board's control'") *with Ash v. Brunswick Corp.*, 405 F. Supp. 234, 245 (D. Del. 1975) ("Omissions constitute violations of [Section 14(a)] only if they are both material and make other statements false or misleading.").

court filings, seems to be an attempt to avoid the impact of forum-selection bylaws."[7]

- "Recent trends indicate that the Delaware Court of Chancery is becoming less common as a filing destination.  This is likely due to the impact of the *Trulia* decision."[8]

*See also In re Trulia*, 129 A.3d at 898 (explaining that the Court of Chancery will award fees for disclosure-only settlements only if "supplemental disclosures address a plainly material misrepresentation or omission").[9]  In other words, Counsel chose to file suit under the laws that they perceived to be the most friendly to their inevitable fee request, even though these laws are less friendly to the merits of Plaintiff's claims.

Because Counsel unreasonably filed and quickly abandoned the meritless P.I. Motion for improper purposes (*e.g.*, harassing Defendants into a settlement and placing Counsel's interests ahead of Plaintiff's) and to needlessly increase the cost of the litigation,

---

[7] Steven Davidoff Solomon, *The Shifting Tides of Merger Litigation*, HARVARD LAW SCHOOL FORUM ON CORPORATE GOVERNANCE AND FINANCIAL REGULATION (Mar. 1, 2017)    (emphasis added), https://corpgov.law.harvard.edu/2017/03/01/the-shifting-tides-of-merger-litigation/; *see also* Matthew D. Cain et al., *The Shifting Tides of Merger Litigation,* VANDERBILT UNIVERSITY LAW SCHOOL: LEGAL STUDIES RESEARCH PAPER SERIES, and UNIVERSITY OF PENNSYLVANIA LAW SCHOOL INSTITUTE FOR LAW AND ECONOMICS, at 24 (noting *Trulia* and other decisions have "affected the ability to settle cases for a disclosure-only outcome," with most such settlements being approved before 2014 and 22% of such settlements being rejected or withdrawn in 2016), *available at* http://ssrn.com/abstract=2922121.

[8] Ravi Sinha, *Shareholder Litigation Involving Acquisitions of Public Companies: Review of 2015 and 1H 2016 M&A Litigation*, CORNERSTONE RESEARCH, *available at* https://www.cornerstone.com/Publications/Reports/Shareholder-Litigation-Involving-Acquisitions-2016.

[9] The federal securities laws also preclude an award of attorneys' fees where plaintiff has only obtained supplemental disclosures, though the Tenth Circuit has not yet addressed this issue.  *See* 15 U.S.C. § 78u-4(a)(6).  Thus, it comes as no surprise that Counsel filed the Complaint in a Tenth Circuit district court.

the Court should impose sanctions under 28 U.S.C. § 1927 and its inherent authority.  *See, e.g.*, *Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1279 (10th Cir. 2005) (affirming sanctions against counsel under 28 U.S.C. § 1927 for filing lengthy motions and briefs in meritless challenges to an arbitration award); *Lundahl v. Halabi*, 600 F. App'x 596, 607 (10th Cir. 2014) (affirming sanctions against a party for delaying the filing of a dismissal and for dismissing the action "to avoid having to establish the merit of her allegations," causing the parties and court unnecessary expense), *cert. denied*, 137 S. Ct. 46 (2016); *Chavez*, 2000 WL 702309, at *2 (affirming an award of attorneys' fees because the trial court found "the complaint was filed for the improper purpose of causing needless expense to Defendants"); *Paycom Payroll, LLC v. Richison*, 2011 WL 13112251, at *3 (W.D. Okla. June 8, 2011) (imposing sanctions because a party ignored the existence of information related to business contacts with the forum, was aware of the impact this information would have on jurisdictional issues, and made misleading statements to the court).

### B.    The P.I. Motion pursued facially meritless claims.

The Court should also impose sanctions because the P.I. Motion was facially meritless, in further violation of this Court's Local Rules and Section 1927.  This Court has adopted the Oklahoma Rules of Professional Conduct as the standard governing attorney conduct.  LCvR83.6(b).  Rule 3.1 of the Oklahoma Rules of Professional Conduct provides:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good

> faith argument for an extension, modification or reversal of
> existing law.

*Id.* Sanctions are also appropriate under 28 U.S.C. § 1927 where counsel have acted "recklessly and with indifference to well-established law" in pursuing arguments. *See Steinert*, 440 F.3d at 1224-25. Here, Counsel pursued two disclosure allegations in the P.I. Motion, both of which were frivolous and therefore sanctionable.

First, the P.I. Motion argued that the Proxy must reconcile non-GAAP projections to their nearest GAAP counterpart. P.I. Br. at 7-10 (citing 17 C.F.R. § 244.100). This claim is expressly precluded by the plain language of the applicable regulation. *See* P.I. Opp. Br. [Doc. 9] at 6-11; 17 C.F.R. § 244.100(d) (explaining that the GAAP reconciliation rules do not apply to proxy statements that, like the Proxy, "relat[e] to a proposed business combination" and are subject to 17 C.F.R. § 229.1015). The P.I. Brief did not even mention the exemption in Section 244.100(d).[10]

Second, the P.I. Motion argued that the Proxy must disclose that Morgan Stanley "owned" a minimal stake in Patterson. P.I. Br. at 11-12. But this information had already been publicly disclosed. *See* P.I. Opp. Br. [Doc. 9] at 16. Further, Morgan Stanley's

---

[10] Counsel have a self-interest in avoiding adjudication of this claim, which would almost certainly create precedent establishing that it fails under the plain language of the applicable regulation. Indeed, Counsel routinely file strike suits with similar allegations and dismiss them with no adjudication on the merits or significant litigation activity other than (in most instances) an attempt to garner a fee. *See, e.g.*, Exs. 6 & 7, *Phelps v. Delek US Holdings, Inc.*, No. 3:17-cv-00910 (M.D. Tenn. June 2, 2017), *voluntarily dismissed*, June 29, 2017; Exs. 8 & 9, *Garcia v. Kate Spade & Co.*, No. 1:17-cv-04177-RMB (S.D.N.Y. June 5, 2017), *voluntarily dismissed*, June 29, 2017; Exs. 11 & 12, *Klein v. Team Health Holdings, Inc.*, No. 3:16-cv-00675 (E.D. Tenn. Dec. 2, 2016), *voluntarily dismissed*, Feb. 6, 2017.

holdings in Patterson constituted "roughly 0.016% of its portfolio of corporate equities and 0.006% of the overall portfolio," and there was no evidence that Morgan Stanley *itself* owned these shares (as opposed to holding them for their customers, as banks often do). *Id.* at 12. Such *de minimis* "investments" are plainly immaterial under well-established law.[11]

Because the P.I. Motion advanced arguments that had no basis in the law, the Court should impose sanctions against Counsel under the Local Rules and 28 U.S.C. § 1927.[12]

---

[11] *See, e.g.*, *Kin-Ark Corp. v. Boyles*, 593 F.2d 361, 366 (10th Cir. 1979) (concluding that it was not material that directors held .72% and .42% interests in two corporate investments that were generally discussed in the prospectus because of "[t]he de minimis nature of the omissions" relative to the totality of the directors' investments); *In re Micromet, Inc. S'holders Litig.*, 2012 WL 681785, at *12 (Del. Ch. Feb. 29, 2012) (finding financial advisor's 0.16% investment in one of the companies involved in a merger to be immaterial).

[12] The Motion for Fees is not supported by any reasonable legal or factual arguments and, therefore, is also sanctionable under the Local Rules, Section 1927, and Rule 11. *See* FED. R. CIV. P. 11(b)(2), (b)(3). It is meritless for at least the following reasons: (1) Plaintiff obtained no monetary recovery, and the Private Securities Litigation Reform Act does "not allow for the computation of fees on the basis of . . . non-damages items," *see Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 438 (2d Cir. 2007), and 15 U.S.C. § 78u-4(a)(6); (2) the information omitted before the Supplemental Disclosures was not material, and its absence did not render specific disclosures in the Proxy misleading (*see* Opp. to Mot. for Fees [Doc. 30] at 2-3, 5-13); (3) Plaintiff was not the cause of the Supplemental Disclosures—they were disclosed at the SEC's request, and Plaintiff's conclusory, unsupported assertions to the contrary are patently insufficient (*see id.* at 3, 14-15); and (4) Counsel are seeking to apply an unconscionable 3.0x multiplier to their inflated time records and purported hourly rates (s*ee id.* at 15-25). Because Defendants recently filed a brief on these issues, they will not repeat their arguments here.

**C.**     **Sanctions in the amount of attorneys' fees that Counsel have improperly caused Defendants to incur would be reasonable and proportionate.**

Whether under Rule 11, 28 U.S.C. § 1927, or this Court's inherent authority—all of which support the imposition of sanctions here—Defendants request that the Court impose sanctions against Counsel in the amount of the reasonable attorneys' fees and costs that Defendants have incurred in defending this litigation since March 13, 2017, when SSE filed the Supplemental Disclosures.  Section 1927 allows for a broad award of fees that encompasses the full amount of the "excess costs, expenses, and attorneys' fees reasonably incurred" as a result of the conduct prohibited by the statute.  28 U.S.C. § 1927.  The statute's purpose is "to compensate victims of abusive litigation practices."  *Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1205 (10th Cir. 2008).  In contrast, the purpose of Rule 11 is more focused on punishment than restitution.  *See id.* (comparing sanctions under Section 1927 and Rule 11 and noting that Rule 11 sanctions are meant "to deter and punish offenders").  Sanctions imposed under Rule 11 should "deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4).[13] And, of course, the Court has "broad inherent power to sanction misconduct and abuse of the judicial process . . . ."  *Klein v. Harper*, 777 F.3d 1144, 1147 (10th Cir. 2015); *Mellott v. MSN Comm'cns, Inc.*, 492 F. App'x 887, 889-90 (10th Cir. 2012) (discussing federal courts' broad powers to impose costs under their inherent authority, including requiring a

---

[13] The Tenth Circuit has declined to apply this "parsimony principle" to sanctions under Section 1927.  *Hamilton*, 519 F.3d at 1205-06.

litigant to pay the court for the cost of "the court's inconvenience and the waste of judicial resources").

Awarding Defendants the fees and expenses they have incurred in this litigation from March 13 through the present serves the purposes of Rule 11, Section 1927, and the Court's inherent authority.  In fact, such an award is conservative.  Because "[t]he entire course of the proceedings was unwarranted," the attorneys' fees and costs that Defendants have incurred for the entirety of the lawsuit would be an appropriate sanction.  *Steinert*, 440 F.3d at 1221 (affirming an award of attorneys' fees under 28 U.S.C. § 1927 for counsel's defense of meritless claims in response to a motion to dismiss); 28 U.S.C. § 1927 (providing for sanctions in the form of "excess costs, expenses, and attorneys' fees reasonably incurred").

Further, such an award is conservative because Counsel are serial abusers of the judicial system.  Their pattern of conduct in this lawsuit is, unfortunately, nothing new.  Counsel prowl for pending mergers, file meritless strike suits all over the country to challenge these mergers, and seek meaningless, last-minute, disclosure-only settlements that (conveniently) provide for Counsel to receive attorneys' fees.[14]  Courts throughout the

---

[14] Many of these suits involved nearly identical allegations as those in this case, and like this case, were voluntarily dismissed.  *See, e.g.,* Exs. 15 & 16, *Paprakis v. Skullcandy*, No. 2:16-cv-00810-DB (D. Utah July 19, 2016) (proxy allegedly omitted "estimates of fresh [sic] cash flow" and conflict of interest by company's financial advisor), *voluntarily dismissed*, Nov. 9, 2016; Exs. 11 & 12, *Klein v. Team Health Holdings, Inc.*, No. 3:16-cv-00675 (E.D. Tenn. Dec. 2, 2016) ("the Proxy fails to disclose . . . projections for the metrics used to calculate 'Adjusted EBITDA' and 'Unlevered Free Cash Flow.'"), *voluntarily dismissed*, Feb. 6, 2017; Exs. 17 & 18, *Krieger v. LRR Energy, L.P.*, No. 4:15-cv-02017 (S.D. Tex. July 14, 2015) ¶¶ 79-81 (proxy allegedly omitted "projected free cash flows"), *voluntarily dismissed,* July 17, 2015; Ex. 6, *Phelps*, No. 3:17-cv-00910 (M.D. Tenn. June

country have uniformly criticized the use of securities class action lawsuits to extract attorneys' fees for plaintiffs' counsel: "far too often such litigation serves no useful purpose for stockholders. Instead, it serves only to generate fees for certain lawyers," who (like Counsel) "are regular players in the enterprise of routinely filing hastily drafted complaints" challenging mergers in hopes of garnering a cost-of-defense settlement or, failing that, a fee award for a few weeks of half-hearted litigation. *In re Trulia*, 129 A.3d at 891-92; *see also In re Walgreen*, 832 F.3d at 724.  Given this backdrop, a significant award is "reasonably necessary to deter the undesirable behavior" of Counsel, as well as to punish Counsel's "present litigation abuse." *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1259 (10th Cir. 2015); *Paycom Payroll*, 2011 WL 13112251, at *3 (noting Rule 11's purposes include deterring future litigation abuse, punishing present abuse, compensating victims of litigation abuse, and facilitating case management).  Moreover, the requested award would also serve Rule 11's purpose of deterring similarly abusive and meritless conduct.  *See* Fed. R. Civ. P. 11(b) (noting sanctions under Rule 11 should "deter repetition of the conduct *or comparable conduct by others similarly situated*" (emphasis added)). While Counsel's conduct in this litigation may be a new low, Counsel are not alone in filing meritless strike suits, harassing defendants through eleventh-hour motions for injunctions, and in pursuing their interest in fees above the interests of their clients. *See In re Trulia*, 129 A.3d at 891-92.

_____

2, 2017) ¶¶ 25-30 (containing verbatim allegations concerning "line item projections" and GAAP reconciliations); Exs. 8 & 9, *Garcia v. Kate Spade & Co.*, No. 1:17-cv-04177-RMB (S.D.N.Y. June 5, 2017) (same), *voluntarily dismissed*, June 29, 2017.

In light of Counsel's conduct in this litigation, an award of fees beginning on March 13 is warranted and conservative. *See Farmer*, 791 F.3d at 1259 (affirming the district court's imposition of fees under § 1927 from the date a party received a settlement agreement that he had agreed to sign, when he failed to sign the agreement and multiplied the proceedings from that date forward); *Sky Harbor Air Serv.*, 491 F. App'x at 894-95 (affirming an award of the fees and costs associated with defending against meritless claims under Rule 11); *Sieverding v. Colo. Bar Ass'n*, 237 F. App'x 355, 358-59 (10th Cir. 2007) (same).

**D.      Requested findings and conclusions.**

Section 1927 involves an objective standard, and does not require a finding of bad faith. *See Hamilton*, 519 F.3d at 1201-02.  To impose sanctions under 28 U.S.C. § 1927, the court need only conclude that the offensive conduct is "conduct that, 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'"  *Id.* at 1202 (quoting *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987) (en banc)).    Additionally, "finding a protracted course of vexatious conduct is unnecessary," *id.* at 1203; "intentionally act[ing] without a plausible basis" suffices, as does an unwarranted course of proceedings, *see Dominion Video Satellite, Inc.*, 430 F.3d at 1278.  In leveling sanctions under Section 1927, the court must simply "state with specificity 'the excess costs providing a basis for the sanctions,' 'the conduct leading to the sanctions,' and 'the reason for the sanction.'"  *Hamilton*, 519 F.3d at 1204.

As described *supra*, Counsel's conduct clearly manifests either intentional or reckless disregard for their duties to the Court, such as withdrawing the P.I. Motion based

on information Counsel reviewed *before even beginning to draft* the P.I. Motion. Defendants will address the amount of excess fees and costs expended due to Counsel's objectively vexatious and unreasonable conduct should the Court impose sanctions.

To impose sanctions under Rule 11(b)(1) or its inherent authority, this Court must find that Counsel acted in bad faith after giving Counsel notice and a reasonable opportunity to respond. *See generally Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015); *Kornfeld v. Kornfeld*, 393 F. App'x 575, 579 (10th Cir. 2010). As this brief has described, Counsel's own filings reveal their bad faith by, among other things, proceeding with the P.I. Motion despite knowledge of the Supplemental Disclosures (which Counsel now claim were sufficient for shareholders to make an informed vote) and abandoning the suit to file a meritless Motion for Fees as soon as Counsel obtained purported evidence in support of their fee request.

To impose sanctions against Counsel under Rule 11(b)(2), this Court must conclude that Counsel pursued "claims, defenses, and other legal contentions" that were not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). This Court should conclude that it was objectively unreasonable for Counsel to seek fees. *See, e.g.*, *In re Safeco Ins. Policy ex rel. Skinner*, 96 F. App'x 654, 655 (10th Cir. 2004) (affirming sanctions imposed for the objectively unreasonable act of untimely removing an action from state court).

Finally, specific findings must be made under Rule 11 "as to the type and amount of sanctions reasonably necessary to deter the wrongdoer," including:

[T]he reasonableness of the requested fees and costs, . . . the minimum that will serve to adequately deter the undesirable behavior, the offender's ability to pay, that party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, [and] the risk of chilling the type of litigation involved.

*Paycom Payroll*, 2011 WL 13112251, at *4 (citations and internal quotation marks omitted).  For all of the reasons discussed throughout this brief, Defendants submit that their full fees and costs since March 13, 2017 would be a conservative sanction for these purposes.  If the Court concludes sanctions are warranted, Defendants will submit evidence of such fees and any other factual information the Court may require.

## IV.    CONCLUSION

For the reasons stated,[15] Defendants respectfully request that the Court grant the Motion for Sanctions and enter sanctions against Monteverde & Associates PC under 28 U.S.C. § 1927, Rule 11, or the Court's inherent authority.  Defendants request an award of all attorneys' fees and costs that Defendants have incurred since March 13, 2017. Defendants also request that the Court grant all further relief to which they may be entitled.

---

[15] Defendants rely on the arguments made in this brief and in their Response in Opposition to Plaintiff's Motion for An Award of Attorneys' Fees and Expenses, in which Defendants explain that the Motion for Fees is not supported by any reasonable legal or factual arguments.  *See generally* Opp. to Mot. for Fees [Doc. 30].

DATED:  August 14, 2017                    Respectfully submitted,

                                          */s/ Timothy J. Bomhoff*
                                          Timothy J. Bomhoff, OBA # 13172
Patrick L. Stein, OBA #30737
MCAFEE & TAFT
Tenth Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102
Telephone: (405) 552-2339
Facsimile: (405) 228-7339
tim.bomhoff@mcafeetaft.com
patrick.stein@mcafeetaft.com


Of Counsel:
Michael C. Holmes
Craig E. Zieminski
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Telephone: (214) 220-7700
Facsimile: (214) 220-7716
mholmes@velaw.com
czieminski@velaw.com

*Attorneys for Defendants Seventy Seven Energy, Inc., Jerry L. Winchester, Victor Danh, Andrew Axelrod, Douglas J. Wall, David King, Edward J. Dipaolo, and Steven Hinchman*

## <ins>CERTIFICATE OF SERVICE</ins>

The undersigned hereby certifies that on this 14th day of August, 2017, the above and foregoing instrument was served via email and certified mail, return receipt requested, on counsel for Plaintiff:

Juan E. Monteverde
Monteverde & Associates PC
The Empire State Building
350 Fifth Avenue, 59th Floor
New York, NY 10118
jmonteverde@monteverdelaw.com


*Timothy J. Bomhoff*
Timothy J. Bomhoff